**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| VICTORIA POOLE, EVERLEON BATES, | ) | |
| CORNELL LEWIS, FABLION FLEMING, | ) | |
| SHARON HENRY, CHERYL MILES, | ) | CIVIL ACTION NO: |
| YOLANDA NAPIER, SHARON | ) | |
| WATKINS,   and KAREEM WATSON, | ) | 2:07cv502-MHT-SRW |
| collectively, | ) | |
| | ) | |
|      Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| KFC CORPORATION, | ) | |
| | ) | |
|      Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING A  DECISION BY THE JUDICIAL PANEL FOR MULTIDISTRICT LITIGATION**

Defendant KFC Corporation respectfully submits this memorandum in support of its motion to stay all proceedings in this action pending a transfer decision by the Judicial Panel on Multidistrict Litigation ("JPML"), pursuant to 28 U.S.C.A. § 1407.

**Background**

In September 2005, a group of KFC Assistant Unit Managers ("AUMs") commenced a putative collective action in the United States District Court for the District of Minnesota, alleging that KFC had violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., by failing to pay overtime to AUMs at its restaurants.  Parler v. KFC Corp., Civ. No. 05-2198-PJS-JJG, D. Minn.  Based upon the relatively lenient standard

for conditional class certification in FLSA actions, KFC stipulated to conditional certification of a nationwide class. Plaintiffs sent notice to more than 3,500 potential class members using contact information provided by KFC, and 993 AUMs opted to assert claims for overtime. Plaintiffs amended their complaint in September of 2006 to add state-law claims for Rule 23 classes in Minnesota, Illinois, Nevada, New Jersey, New York, Ohio, and Pennsylvania. Throughout the Parler litigation, the parties conducted extensive discovery, including depositions of 37 Plaintiffs and several KFC representatives.

In October 2006, Plaintiffs moved for decertification of their action because their job duties vary from restaurant to restaurant. The Court agreed, granted the motion to decertify, and dismissed without prejudice all Plaintiffs except Christian Parler from the case. Parler Order, Ex. A [Parler Dkt 180].

The decertified class splintered, in most cases by state,[1] and over 500 former Parler Plaintiffs filed new cases: 25 actions in federal court and 2 in state court.[2] 324 former Parler Plaintiffs filed individual requests for arbitration before the American Arbitration Association ("AAA"), and requested arbitration in more than 175 cities throughout the United States. All of these actions have been filed by the same national counsel within the past 90 days on behalf of former Parler Plaintiffs, and in each instance,

---

[1]  Two actions are pending in the United States District Court for the District of Minnesota. Because the actions are related, the second action, Ackerman, was transferred to the Parler court.

[2]  The two state court actions have since been properly removed to federal court by KFC.

Plaintiffs allege the same FLSA violations.[3]   To date, Plaintiffs have served virtually identical discovery requests in 17 actions, including this action, to which Defendants are responding in due course, and Plaintiffs and Defendants have met, conferred and exchanged initial disclosures in the actions as the Federal Rules of Civil Procedure require.  Otherwise, no discovery has taken place in any of the newly filed actions.

The only significant activity in these cases has occurred in the District of Minnesota, where the <u>Parler</u> action originated.  KFC maintains that Plaintiffs cannot proceed collectively or on a class basis in any jurisdiction, since, as the <u>Parler</u> Court stated, "[b]ecause their job duties differ on a restaurant-by-restaurant basis, the plaintiffs concede that they are not similarly situated." <u>Parler</u> Report and Recommendation, Ex. B, [Dkt. No. 169] at 2 (emphasis added).  Accordingly, KFC filed a motion before the Minnesota Court to estop Plaintiffs from proceeding either collectively or on behalf of a class because of their previous representations in <u>Parler</u>.[4]   Also pending before the Minnesota Court is KFC's motion asking that the 324 Plaintiffs who have filed arbitration demands be enjoined from proceeding in arbitration, as they waived their right to arbitrate by litigating their claims in district court for nearly two years before filing their demands to arbitrate.  <u>KFC Motion to Enjoin Arbitration</u>, Ex. D, [Parler Dkt. 185, 187].  Both motions are scheduled to be heard on September 6, 2007.  <u>Parler and Ackerman Hearings</u>, Exs. E & F [Parler Dkt. 191-1, Ackerman Dkt. 8].

---

[3]   In 11 of the cases, Plaintiffs also allege state-law claims.  Before the AAA, the Plaintiffs have alleged violations of the FLSA and "state wage and hour laws."

[4]   KFC's motion was filed in <u>Ackerman, et al. v. KFC</u>, No. 07-cv-02656-PJS-JJG (D. Minn.), Ex. C.  [Ackerman Dkt. 10].  <u>Ackerman</u> was brought by Minnesota AUMs dismissed from <u>Parler</u> and is pending before the same court as the original, now single plaintiff, <u>Parler</u> action.

On August 21, 2007, KFC filed a motion before the Judicial Panel on Multidistrict Litigation ("the Panel"), asking the Panel to transfer the 27 newly-filed cases to the United States District Court for the District of Minnesota to coordinate pre-trial proceedings.[5]  The transfer of multidistrict litigation to a single district is designed to eliminate duplicative discovery, avoid conflicting rulings, and save time and costs to litigants and the courts.  In re Plumbing Fixtures Cases, 298 F. Supp. 484 (J.P.M.L. 1968).  It is for precisely those reasons that KFC believes its motion for transfer will be granted by the Panel and why a stay is necessary in this case.  See KFC's MDL Motion, Ex. G.

<u>**Argument**</u>

KFC requests that this Court stay this action pending a decision by the Panel on KFC's transfer motion.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. North American Co., 299 U.S. 248, 254 (1936); Clinton v. Jones, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").  In this case, a stay is particularly warranted, because a stay "provides the opportunity for the uniformity, consistency, and predictability in litigation that underlies the MDL system."  Conroy v. Fresh Del Monte Produce Inc., 325 F. Supp. 2d 1049, 1053 (N.D. Cal. 2004).  "Moreover, a majority of courts have concluded that it

---

[5]    As required by the multidistrict litigation statute, 28 U.S.C. § 1407(c)(ii), a copy of KFC's motion was filed with this court.  See Dkt. 19  .

4

is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources conserved." Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1362 (C.D. Cal. 1997). Three factors that a court may consider when acting on a stay request—the judicial resources preserved, the hardship to the moving party if the case is not stayed, and the prejudice of a stay, if any, to the non-moving party—lean heavily toward the propriety of a stay in this case. Id. at 1360.

A stay would save both KFC and Plaintiffs the hardship of litigating the identical estoppel issue in multiple jurisdictions, litigating other identical legal issues in multiple jurisdictions, and conducting virtually identical discovery in multiple jurisdictions. Moreover, a stay would conserve judicial resources because it would avoid requiring this Court to spend its time on facts, procedural history and claims that the transferee court may consider, and eliminate duplicative hearings and motions. Additionally, because the 27 new actions have only recently been filed,[6] a stay would not prejudice or inconvenience the parties. In contrast, Defendant will be substantially prejudiced if it is required to expend significant effort and resources defending duplicative cases around the country. Finally, because a stay would avoid duplicative motions and discovery, it would also avoid the possibility of inconsistent rulings across various jurisdictions.

## 1. Staying This Action Promotes Judicial Economy.

---

[6]    The original Parler action, because it has been actively litigated for nearly two years, is the only related action to have proceeded significantly.

KFC maintains that Plaintiffs are barred from proceeding collectively, as a class, or joined, by the representations that they made to the court in Parler that they were not similarly situated.  As noted above, KFC has filed a motion before the Minnesota court asking that court to hold those Plaintiffs estopped from proceeding collectively or on behalf of a class.  Twenty-four of the new FLSA cases involve multiple plaintiffs, including the action before this court, and therefore also raise the common question whether Plaintiffs are judicially estopped from proceeding collectively or on behalf of a class or joining their claims based on the same underlying facts.  A stay would conserve judicial resources because it would avoid requiring this Court to spend its time and energy becoming familiar with facts, procedural history and claims with which another Court is already intimately familiar and is currently considering, and eliminate duplicative hearings and motions.  "Because [the …] other cases present the same or a similar issue as is presented here, judicial economy clearly favors a stay [pending a decision by the Panel]."  Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1053 (E.D. Wis. 2001).  In addition, although this Court has invested time in case management, see Dkt. 15, Order Setting Status Conference, and Dkt. 18, Uniform Scheduling Order, it has not yet invested significant time with motions practice and supervising discovery—duties that may be transferred to another court—and therefore a stay pending a decision by the Panel would preserve judicial resources.

**2.  Staying This Action Does Not Harm Plaintiffs And Will Prevent Hardship to Defendant.**

Both parties will benefit from a temporary stay of this action pending a decision from the Panel. Absent a stay, KFC will be irreparably harmed because it will be deprived of one of the purposes of the multidistrict litigation statute—coordinated discovery—and KFC will be forced to defend itself against virtually identical actions across the country, with the duplicative discovery and motions practice that attend nearly identical claims. In fact, Defendant has already begun responding to nearly identical discovery requests in these actions. However, should this court stay this action and KFC's motion for transfer is successful, the transferee court will have the ability to coordinate discovery and eliminate this repetition of effort and waste of resources. Moreover, the benefits to the Defendant—avoidance of repetitive discovery and motions practice—also inure to the benefit of Plaintiffs as they similarly avoid repetitive discovery and motions. And because KFC is only requesting a temporary stay pending a decision by the Panel, any delay to the Plaintiffs will likely be short and therefore will be only a minor inconvenience to Plaintiffs. The benefits to the court, KFC, and the Plaintiffs in this case clearly outweigh any minor delay the issuance of a stay may cause.

### 3. Staying This Action Avoids Potentially Inconsistent Rulings.

As explained above, the same attorneys, representing the same individuals who were parties to the original Parler action, have filed nearly identical claims against KFC in 27 different courts. Though the Plaintiffs are not "similarly situated" such that their claims may be tried together, there is no question that identical questions of law and fact will have to be resolved in each of these actions. The chance of potentially inconsistent rulings, therefore, is not remote, which is one of the reasons KFC has moved to transfer

all of these actions to the same Minnesota court.  Ex. G, MDL Motion.  As discussed above, for example, KFC has already filed a motion to estop Plaintiffs from proceeding on a collective or class basis in Minnesota, Ex. C, [Ackerman Dkt. 10], and should KFC's transfer motion be denied, KFC will file similar motions in the 23 other multi-Plaintiff jurisdictions, including this one, where Plaintiffs purport to proceed collectively or on behalf of a class.  "The purpose of [MDL] transfers is to further judicial economy and to eliminate the potential of conflicting pretrial rulings."  Good v. Prudential Ins. Co. of Am., 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998).  Staying proceedings in this case pending a transfer decision by the Panel will help eliminate the potential for potentially conflicting pretrial rulings, particularly regarding whether the former Parler Plaintiffs are estopped from proceeding collectively or as a class.

## CONCLUSION

As a former chairman of the Judicial Panel on Multidistrict Litigation observed:

> a court may wish to defer to the transferee court on a pivotal issue that is likely to be present in other centralized actions; a court may wish to avoid dueling discovery activities and wait until a single transferee court can devise its own schedule accommodating the interests of all a docket's parties and witnesses; or a court . . . may not wish to expend significant energies in developing a familiarity with issues involved in an action likely soon to be assigned to another court.

John F. Nangle, From the Horse's Mouth: The Workings of the Judicial Panel on Multidistrict Litigation, 66 Def. Counsel J. 341, 343 (1999), attached as Ex. H.  All of the factors noted by Judge Nangle are present here and all point to staying this action.  Therefore, for the foregoing reasons, KFC respectfully requests this Court to grant KFC's

motion to temporarily stay this action until the Panel has ruled on KFC's motion to

transfer pursuant to 28 U.S.C. § 1407.

Dated:   August 22, 2007                      s/John N. Leach
                                             Attorney for Defendant KFC Corporation
                                             (LEA006)

Of Counsel:
HELMSING, LEACH, HERLONG,
     NEWMAN & ROUSE, P.C.
Post Office Box 2767
Mobile, Alabama 36652
(251) 432-5521
(251) 432-0633 (Fax)
Email:  jnl@helmsinglaw.com

Of Counsel:

MAYER, BROWN, ROWE & MAW LLP
Robert P. Davis
D.C. Bar. No. 334235*
*admitted pro hac vice
1909 K Street N.W.
Washington, D.C.  20006
Telephone:  (202) 263-3000
Fax: (202) 263-3300
rdavis@mayerbrownrowe.com

Diana L. Hoover
TX Bar No. 00787333*
*admitted pro hac vice
700 Louisiana Street
Suite 3400
Houston, TX 77002
Telephone:  (713) 238-2628
Fax: (713) 238-4628
dhoover@mayerbrownrowe.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Donald H. Nichols, Esq.
Paul J. Lukas, Esq.
Michele R. Fisher, Esq.
NICHOLS KASTER & ANDERSON PLLP
4600 IDS Center, 80 South 8th Street
Minneapolis, MN  55402

Edward Still, Esq.
2112 11th Ave. S., Suite 201
Birmingham, AL  35205-2844

s/John N. Leach
Of Counsel

## INDEX TO EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Parler Order, dated June 4, 2007 |
| B | Parler Report and Recommendation, dated January 22, 2007 |
| C | KFC Motion and Memorandum for an Order Denying Certification of a Class or Collective Action and Dismissing Plaintiffs, dated July 20, 2007 |
| D | KFC Motion and Memorandum for an Order Declaring That Plaintiffs Have Waived Their Right to Arbitrate and Enjoining Plaintiffs from Pursuing Arbitration, dated June 28, 2007 |
| E | Notice of Hearing, dated July 20, 2007 |
| F | Notice of Hearing, dated June 29, 2007 |
| G | KFC MDL Motion and Memorandum for Transfer of Actions to the District of Minnesota Pursuant to 28 U.S.C. § 1407 for Coordinated Pretrial Proceedings, dated August 21, 2007 |
| H | John F. Nangle, From the Horse's Mouth: The Workings of the Judicial Panel on Multidistrict Litigation, 66 Def. Counsel J. 341 (1999) |

**EXHIBIT**

**"A"**

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

CHRISTIAN PARLER, et al., individually
and on behalf of all other persons similarly
situated,

                Plaintiffs,

v.

KFC Corporation,

                Defendant.

Case No. 05-CV-2198 (PJS/JJG)

ORDER

---

Donald H. Nichols, Michele R. Fisher, Paul J. Lukas, Rachhana T. Srey, and
Sarah M. Fleegel, NICHOLS KASTER & ANDERSON, PLLP, for plaintiffs.

Robert P. Davis and Robert C. Varnell, MAYER BROWN ROWE & MAW; and
Robert R. Reinhart and Gabrielle D. Mead, DORSEY & WHITNEY LLP, for
defendant.

This matter is before the Court on plaintiffs' objection to Magistrate Judge Jeanne J.

Graham's January 22, 2007 Report and Recommendation ("R&R"). Judge Graham recommends

(1) granting plaintiffs' motion for decertification; (2) dismissing the opt-in plaintiffs without

prejudice; (3) prohibiting the late opt-in plaintiffs from joining this action; and (4) staying any

order adopting the R&R for sixty days. The Court has conducted a de novo review. *See* 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Plaintiffs do not object to any of these recommendations except the third. With respect to

that recommendation, the Court agrees with plaintiffs that, because defendant has indicated that

it does not oppose the joinder of plaintiffs who filed their consent forms as of December 1, 2006,

the Court should permit those plaintiffs to join this action before being dismissed in order to

preserve their rights. The Court does not adopt the R&R insofar as it recommends to the

contrary.

As noted, plaintiffs do not object to any of Judge Graham's remaining recommendations. But plaintiffs do object to Judge Graham's statement that, "[b]ecause their job duties differ on a restaurant-by-restaurant basis, the plaintiffs concede that they are not similarly situated." R&R at 2. Plaintiffs argue that their concession was narrower than Judge Graham's characterization and ask the Court to "correct" the R&R in order to prevent defendant from using this statement against plaintiffs in subsequent litigation.

Judge Graham was not, in this sentence, making any factual finding. Rather, she was characterizing statements made by plaintiffs in their papers. Those statements speak for themselves. Other courts need not rely on Judge Graham to tell them what plaintiffs did or did not concede in this litigation; those courts can look directly at the plaintiffs' representations and make their own decisions.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.   Plaintiffs' motion for decertification and to add plaintiffs [Docket No. 135] is GRANTED in part and DENIED in part.

2.   The motion is GRANTED as follows:

   a.   All plaintiffs who filed a notice of consent with the Court as of December 1, 2006 are permitted to join this action.

   b.   The claims of existing opt-in plaintiffs, including those newly joined under paragraph 2(a) of this Order, are DISMISSED WITHOUT PREJUDICE.

-2-

3.      Paragraph 2(b) of this Order is STAYED for sixty days.

4.      Plaintiffs' motion is DENIED in all other respects.


Dated: June 4, 2007                          s/Patrick J. Schiltz
                                             Patrick J. Schiltz
                                             United States District Judge

EXHIBIT

"B"

### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

---

Christian Parler,
individually and on behalf of others
similarly situated,

      Plaintiffs,

v.

KFC Corporation,

      Defendant.

Civil No. 05-2198 (PJS-JJG)

REPORT
AND
RECOMMENDATION

---

This matter comes before the undersigned on December 21, 2006 on the plaintiffs' motion to

decertify and to add new plaintiffs (Doc. No. 135).  Paul J. Lukas, Esq., Donald H. Nichols, Esq., and

Michele R. Fisher, Esq., appeared on behalf of the plaintiffs.  Robert P. Davis, Esq., and Robert R.

Reinhart, Esq. appeared on behalf of defendant KFC Corporation.

## I.     BACKGROUND

The plaintiffs, Christian Parler and others employed as assistant general managers by defendant

KFC Corporation, bring action under the Fair Labor Standards Act (FLSA) and similar state wage laws.

They allege that they were improperly exempted from overtime pay requirements.  There are currently

about one thousand plaintiffs, from twenty-nine states, participating in this litigation.

The plaintiffs principally bring a collective action under § 16(a) of the FLSA, which provides in

relevant part,

> An action to recover [under the FLSA] may be maintained against any
> employer . . . by any one or more employees for and in behalf of himself
> and other employees similarly situated.  No employee shall be party

> plaintiff to any such action unless he gives his consent in writing to become
> such a party and such consent is filed in the court in which such action is
> brought.

28 U.S.C. § 216(b). The statute provides that similarly situated plaintiffs, who consent in writing to join

the action, may participate in the collective action. Where a collective action is pleaded, a two-phase

procedure is used to determine whether the opt-in plaintiffs are similarly situated.

The first phase is conditional certification. At this phase, the court considers whether there is a

colorable basis to show the existence of a group of similarly situated plaintiffs. This inquiry is not

particularly intensive, and on an appropriate showing, conditional certification is granted and notice is given

to prospective opt-in plaintiffs. The second phase is decertification, which ordinarily occurs by a motion

from the defendant at the conclusion of discovery. The court reexamines whether the plaintiffs are similarly

situated, this time with greater scrutiny. Should the litigation survive decertification, the collective action

proceeds to trial. *See, e.g., Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir.

1998);[1] *Smith v. Heartland Automotive Servs., Inc.*, 404 F.Supp.2d 1144, 1149 (D.Minn. 2005).

In this litigation, collective certification was previously granted, and the *plaintiffs*, rather than the

defendants, now move for decertification. Because their job duties differ on a restaurant-by-restaurant

basis, the plaintiffs concede that they are not similarly situated. This conclusion is not contested by KFC.

The issue on this motion, instead, is the appropriate remedy. The plaintiffs argue that they should be

organized into separate groups, state by state, and have venue transferred to the appropriate federal district

---

[1]     Although *Thiessen* involves collective actions under the Age Discrimination in Employment Act,
that act expressly incorporates the collective action procedure of the FLSA, and so it is equally controlling
here. *See, e.g., Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995).

court. KFC counters that the appropriate remedy is to dismiss the opt-in plaintiffs without prejudice.

## II.    ANALYSIS

Federal authorities consistently state that, where decertification is granted in an action under the

FLSA, the opt-in plaintiffs are dismissed without prejudice and the named plaintiffs proceed to trial. *See,*

*e.g., Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1214-15 (11th Cir. 2001) (quoting *Mooney*

*v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)); *Scholtisek v. Eldre Corp.*, 229 F.R.D.

381, 387 (W.D.N.Y. 2005) (same); *Smith*, 404 F.Supp. 2d at 1149 (same).

Although the current motion occurs after conditional certification, some additional guidance may

be provided by cases at this procedural stage. Where plaintiffs show some common policy or conduct

between employees in a particular state or geographic area, some authorities have granted conditional

certification for that area. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006);

*Bernard v. Household Int'l, Inc.*, 231 F.Supp. 433, 434 (E.D.Va. 2003); *Bayles v. American Medical*

*Response of Colorado, Inc.*, 962 F.Supp. 1346, 1347-48 (D.Colo. 1997). But where plaintiffs fail to

show such a common policy, even conditional certification is denied. *See Saxton v. Title Max of*

*Alabama, Inc.*, 431 F.Supp.2d 1185, 1188 (N.D.Ala. 2006); *Miekle v. Laidlaw Transit, Inc.*, 313

F.Supp.2d 759, 764 (N.D.Ill. 2004).

In the papers supporting their motion, the plaintiffs did not offer evidence supporting their

reorganization into state-by-state groups. But at the motion hearing, they alluded to evidence about the

existence of common state policies. Given the state of the record, this Court declines the parties' invitation

to make findings on whether plaintiffs in certain areas are similarly situated. The plaintiffs have not

adequately shown a common policy, unique to employees in any particular state, that would justify their

reorganization into state-by-state groups. And it is probable, moreover, that such groups would not even qualify for conditional certification. *Cf. Saxton*, 431 F.Supp. at 1188; *Mielke*, 313 F.Supp.2d at 764.

To show that reorganization and transfer of venue is appropriate, the plaintiffs primarily rely on *England v. New Century Financial Corp.*, from the Middle District of Louisiana. The court in that case denied conditional certification. Because potential opt-in plaintiffs had cognizable claims, the court granted them time to file individual actions, which would then be transferred to an appropriate venue. 370 F.Supp.2d 504, 511 (M.D.La. 2005).

The plaintiffs suggest that *England* recognized the authority of a court to transfer opt-in plaintiffs into another venue after decertification. This argument is misdirected for several reasons. *England* involved conditional certification, not decertification. Assuming that opt-in plaintiffs were part of the action, the court did not grant them a direct transfer of venue. Instead the court instructed those plaintiffs to *file separate actions*, which implies that they were either excluded or dismissed without prejudice from the failed collective action. Only after these filings did the court contemplate transfer of venue.

There is reason to believe, furthermore, that the remedy offered by in *England* is a novel one. It did not cite any authorities, other than 28 U.S.C. §§ 1406 and 1431, authorizing such a procedure. The first statute, § 1406, allows a court to transfer an improperly venued matter. The other statute, § 1431, allows a court to transfer venue where it lacks jurisdiction.

Because the plaintiffs are appropriately dismissed without prejudice, it is not necessary to decide transfer of venue. Even if this question were presented for decision before this Court, the plaintiffs allege no facts demonstrating that venue in the District of Minnesota is improper. So it is not reasonable to consider transfer for reasons of improper venue under § 1406. *Cf. Gilbert v. Texas Mental Health &*

4

*Mental Retardation*, 888 F.Supp. 775, 778 (N.D.Tex. 1995) (initially examining whether venue was appropriate under 28 U.S.C. § 1404); *Professional Ass'n Travel Serv., Inc. v. Arrow Air, Inc.*, 597 F.Supp. 475, 476 (D.D.C. 1984) (considering facts that required transfer of venue).

In addition to transfer of venue, the plaintiffs also seek to add eighty-two opt-in plaintiffs who did not timely file their consent to join this collective action. KFC does not oppose their joinder, in part because it believes these plaintiffs may also be dismissed following decertification. Because this Court finds it appropriate to dismiss all current opt-in plaintiffs without prejudice, the issue regarding any late opt-in plaintiffs may be set aside as moot.

## III.    CONCLUSION

Because the plaintiffs concede that the existing opt-in plaintiffs, when examined as a whole, are not similarly situated, this Court concludes decertification is appropriate. The plaintiffs contend that they may be reorganized into state-by-state groups, to proceed as separate actions in other federal district courts. But there is inadequate factual support and no legal support for this remedy. So this Court concludes it is appropriate for the existing opt-in plaintiffs to be dismissed without prejudice. In accordance with ordinary practice, this Court further concludes that the order should be stayed for an appropriate period, in which the opt-in plaintiffs may separately re-file their actions.

## IV.    RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.    The plaintiffs' motion for decertification and to add new plaintiffs (Doc. No. 135) be

    **GRANTED IN PART AND DENIED IN PART** in accordance with the directions of

5

this report and recommendation.

2.    Existing opt-in plaintiffs in this action be **DISMISSED WITHOUT PREJUDICE** and

no further opt-in plaintiffs be permitted to join this action.

3.    Should an order adopt this report and recommendation, that order be **STAYED** for sixty

days.

Dated this 22nd day of January, 2007.          s/Jeanne J. Graham

_____
JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing
and serving specific, written objections by February 8, 2007. A party may respond to the objections within
ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. The
District Court shall make a de novo determination of those portions to which objection is made. Failure
to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in
the United States Court of Appeals for the Eighth Circuit. Unless the parties stipulate that the District Court
is not required, under 28 U.S.C. § 636, to review a transcript of the hearing in order to resolve all
objections made to this report and recommendation, the party making the objections shall timely order and
cause to be filed within ten days a complete transcript of the hearing.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

EXHIBIT

"C"

_____

Ray Ackerman et al. on behalf of
themselves and others similarly
situated,

              Plaintiffs,

vs.

KFC Corporation,

              Defendant.

Case No.: 0:07-cv-02656-PJS-JJG

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT'S
MOTION FOR AN ORDER DENYING
CERTIFICATION OF A CLASS OR
COLLECTIVE ACTION AND
DISMISSING PLAINTIFFS**

## INTRODUCTION AND SUMMARY OF THE MOTION

"The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation." *Hossaini v. W. Mo. Med. Ctr.*, 140 F.3d 1140, 1142 (8th Cir. 1998). Because Plaintiffs previously represented to this Court that their duties vary "from restaurant to restaurant" and therefore that they are not similarly situated, they are now judicially estopped from contradicting themselves, claiming that they are similarly situated, and seeking to proceed collectively or on behalf of a class.

The twenty-one named Plaintiffs in this case previously filed written consents to join <u>Christian Parler et al. v. KFC Corp.</u>, No. 0:05-cv-02198-PJS-JJG, a nationwide, conditionally certified collective action before this Court. In <u>Parler</u>, *Plaintiffs* moved to de-certify the conditionally certified class. The position chosen by Plaintiffs as the *exclusive* basis for their Motion was *not* that their job duties vary from state to state, but rather, that their "job duties vary from restaurant to restaurant." Plaintiffs successfully persuaded the Court to grant their motion based on their representations. As this Court put it, "Because their job duties differ on a restaurant-by-restaurant basis, the plaintiffs concede that they are *not* similarly situated." <u>Parler</u>, Dkt. No. 169 at 2 (emphasis added).

Plaintiffs now return to this Court seeking to pursue a statewide collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and a statewide, opt-out class action under the Minnesota Fair Labor Standards Act, Minn. Stat. § 177.21 *et seq.*, and Federal Rule of Civil Procedure 23. In this new action, in direct contradiction to the position they took in <u>Parler</u>, Plaintiffs represent to this Court that they and all other KFC Assistant Unit Managers ("AUMs") in Minnesota "*are* similarly situated under the

1

Federal Rules of Civil Procedure 23 [sic] ... and the [FLSA], 29 U.S.C. § 216(b)." Complaint ¶ 1 (emphasis added).[1] For the reasons that follow, Plaintiffs are judicially and equitably estopped from claiming that they are similarly situated because their new position is fundamentally and directly inconsistent with the position that they successfully persuaded this Court to adopt in Parler. Accordingly, because Plaintiffs are estopped from proceeding collectively or on behalf of a class, the Court should enter an order denying certification of a class or collective action, striking the relevant allegations in the Complaint, and dismissing all Plaintiffs other than the lead Plaintiff, Mr. Ackerman.[2]

## I. Plaintiffs Are Judicially Estopped From Claiming That They Are Similarly Situated.

In the Eighth Circuit, which is squarely in line with other federal (and state) authority, "[t]he doctrine of judicial estoppel prohibits a party from taking inconsistent posi-

---

[1] Since this Court's June 4 Order decertifying the Parler collective action, Plaintiffs have filed a total of twenty-six lawsuits in state and federal courts around the country and advise that they will also file a lawsuit in New York in the near future. Davis Aff. ¶ 2. In six of these cases, Plaintiffs seek, as they have in Minnesota, to proceed collectively under the FLSA *and* pursue state-law claims on behalf of a putative, Rule 23-style opt-out class. *Id.* KFC anticipates that the New York Complaint will follow the same format. *Id.* In another seventeen cases, Plaintiffs seek to proceed collectively under the FLSA; some of these cases allege pendent state-law claims as well. *Id.* In addition, Plaintiffs have filed three other cases currently styled as single-plaintiff cases. *Id.* Finally, despite having pursued the Parler litigation for almost two years, 324 Plaintiffs have now filed demands for individual arbitration with the American Arbitration Association. A motion to enjoin Plaintiffs from pursuing these arbitrations on the ground that they have waived the right to arbitrate is pending in Parler. *See* Parler, Dkt. Nos. 185, 187.

[2] "The defendant need not wait for the plaintiff to act" and "may move for an order denying class certification." 5 MOORE'S FEDERAL PRACTICE § 23.82[1] (3d ed.); *accord* 3 NEWBERG ON CLASS ACTIONS § 7.6 (4th ed.); 7AA WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1785 (3d ed.).

tions in the same or related litigation." *Hossaini*, 140 F.3d at 1142; *accord, e.g., Amtrust, Inc. v. Larson*, 388 F.3d 594, 600 (8th Cir. 2004). "[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal citation and quotation marks omitted). "Such use of inconsistent positions would most flagrantly exemplify that playing fast and loose with the courts which has been emphasized as an evil the courts should not tolerate." *Scarano v. Cent. R.R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953) (internal quotation marks omitted), *cited with approval in New Hampshire*, 532 U.S. at 750.

Although "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," three "factors typically inform the decision whether to apply the doctrine in a particular case": (i) "a party's later position must be clearly inconsistent with its earlier position"; (ii) "courts regularly inquire whether the party … succeeded in persuading a court to accept [its] earlier position"; and (iii) while it is not a formal element of a claim of judicial estoppel, courts frequently consider "whether the party … would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. 750-51 (internal quotation marks and brackets omitted) (noting, however, that "these factors … do not establish inflexible prerequisites"); *see Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004) (summarizing *New Hampshire*).

In this case, it is abundantly clear that all factors required for the judicial estoppel doctrine to be applied have been met: Plaintiffs have taken a position that is clearly in-

3

consistent with their prior representations in <u>Parler</u>; this Court accepted those prior repre-

sentations in <u>Parler</u> as the basis for granting the motion for decertification requested by

Plaintiffs; and, absent an estoppel against Plaintiffs relitigating the similarly situated issue

twenty-four or more times, *see supra* note 1, Plaintiffs' inconsistency will impose on

KFC an unfair detriment.  Further, Plaintiffs' inconsistency amounts to an attempt to play

"fast and loose" with no fewer than twenty-four courts by first representing to this Court

that they are not similarly situated because their duties vary from restaurant to restaurant

only to then return to this Court and at least twenty-three others to claim just the opposite.

This is precisely the sort of "evil" that "the courts should not tolerate." *Scarano*, 203

F.2d at 513.

> **A.  Plaintiffs' allegations that they are similarly situated are clearly incon-
> sistent with their representations in <u>Parler</u> that Plaintiffs are not simi-
> larly situated because Assistant Unit Managers' job duties vary from
> restaurant to restaurant.**

In their Motion for Decertification in <u>Parler</u>, Plaintiffs repeatedly represented to

the Court that AUMs' job duties "vary from restaurant to restaurant" and depend on the

delegations of responsibilities by the AUMs' individual supervisors (Restaurant General

Managers, or "RGMs"), resulting in "disparate factual and employment settings" that re-

quire "individualized" and "fact-specific" analyses under the FLSA's executive exemp-

tion.[3]  According to Plaintiffs, these restaurant-to-restaurant variations and disparities

---

[3]     For example, among other things, Plaintiffs represented to the Court:

- "[Nancie Rodems (KFC's Rule 30(b)(6) designee)] repeatedly testified that [AUMs']
  job duties and how much time they spend on 'non-exempt' versus 'exempt' activities
  *vary from restaurant to restaurant*." Parler, Dkt. No. 137 at 3 (emphasis added).

*(Continued on next page…)*

rendered them dissimilarly situated and required decertification of the <u>Parler</u> class. *See* Dkt. No. 137 at 8-9; *see also id.* at 7 (Plaintiffs acknowledge that decertification is appropriate when opt-ins are not similarly situated).

---

- "Whether or not AUMs are actually managing two or more full time employees when they are working *varies*. For example, how much time AUMs spend working with other members of the management team *varies from restaurant to restaurant*, and so does the number of team members working under these 'management' employees." *Id.* at 5 (emphases added; footnote omitted).

- "Rodems listed [fifteen different] duties that Defendant considers to be managerial in nature, but stated that whether or not the AUMs were actually performing these duties, and how much time was spent on these tasks *varied....* Whether or not the AUM's supervisor, the Restaurant General Manager ('RGM') delegated any of these 'managerial' duties to an AUM *depended on the restaurant.*" *Id.* at 3-4 (emphases added).

- "[Rodems] stated that the percentage of time AUMs spend working in ... hourly team member positions *varies from restaurant to restaurant. Id.* at 4 (emphasis added; footnote omitted).

- "***The extent and consequences of disparate factual and employment settings of the individual Plaintiffs warrant decertification.***" *Id.* at 8 (Plaintiffs' argument heading; bold and italics by Plaintiffs).

- "***The various defenses available to defendant which appear to be individual to each Plaintiff warrant decertification.***" *Id.* at 9 (Plaintiffs' argument heading; bold and italics by Plaintiffs).

- "Although Defendant is claiming the same exemption for each Plaintiff, the executive exemption, determining whether or not Defendant has proved this affirmative defense *will require a fact-specific analysis of the job duties performed by Plaintiffs*. As a result, decertification is warranted." *Id.* at 9 (emphasis added) (citing *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144 (D. Minn. 2005)).

- "Defendant states that whether or not a RGM actually delegated any 'managerial' duties to an AUM, and which duties were delegated, *depended on the RGM.*" *Id.* at 8 (emphasis added).

- "[The executive] exemption is an affirmative defense ... and according to [Rodems], *will involve an individualized analysis* of the job duties performed by [AUMs] from across the country." *Id.* at 6-7 (emphasis added).

Now, however, these same Plaintiffs have returned to this same Court representing that they are entitled to proceed on a statewide basis and that they "*are* similarly situated under the Federal Rules of Civil Procedure 23 [sic] ... and the [FLSA], 29 U.S.C. § 216(b)." Complaint (Dkt. No. 1) ¶ 1 (emphasis added); *see also, e.g., id.* ¶¶ 2-3, 14-22, 32, Pt. VII.B.3 (similar class- or collective-action allegations). These two positions are clearly inconsistent. Plaintiffs cannot represent to this Court in one action that *restaurant-by-restaurant* variations render them dissimilarly situated and require decertification and then immediately return to this Court maintaining that those same *restaurant-by-restaurant* variations are not a barrier to certification of a statewide action.[4] *Cf. Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 659-60 (7th Cir. 2004) (Posner, J.) ("In the previous round of this protracted litigation the defendants [successfully] urged the district court to accept the giant class as appropriate for a global settlement ... and so are now precluded by the doctrine of judicial estoppel from challenging its adequacy, at least as a settlement class....") (citing *New Hampshire, supra*).

### B. Plaintiffs Successfully Moved To Decertify The Collective Action In <u>Parler</u> By Representing To This Court That Their Duties Vary From Restaurant To Restaurant and Thus They Are Not Similarly Situated.

In the <u>Parler</u> case, *Plaintiffs* made the deliberate decision to move to decertify the conditionally certified class. Plaintiffs characterized their Motion for Decertification as "based *exclusively* upon the testimony of Defendant's Rule 30(b)(6) corporate designee," Nancie Rodems, who, according to Plaintiffs, "repeatedly testified that although Defen-

---

[4]    Plaintiffs' representations would be consistent only if KFC had only one restaurant in each state, at which all the Plaintiffs in the state worked. But such is not at all the case.

dant's general exemption policy is applied nationwide, the *Assistant Unit Managers' job duties vary from 'restaurant to restaurant.'*" Parler, Dkt. No. 137 at ·1-2 (emphases added). Plaintiffs "[a]ccept[ed] this testimony as true" and argued that decertification was required due to "the 'disparate factual and employment settings of the individual plaintiffs.'" *Id.* at 2. As noted just above in Part I.A, Plaintiffs emphasized these restaurant-by-restaurant variations repeatedly and in great detail.

In response to Plaintiffs' Motion, and in reliance on Plaintiffs' representations (which the Court accurately called concessions, Parler, Dkt. No. 169 at 2), KFC explicitly agreed that Plaintiffs are not similarly situated and that decertification was appropriate *because of* the restaurant-by-restaurant variations in AUMs' job duties and the individualized inquiries that would be required under the FLSA's executive exemption. Parler, Dkt. No. 151 at 1. KFC was also clear, however, that, because Plaintiffs had admitted that AUMs' job duties vary significantly from restaurant to restaurant and that individualized inquiries into the circumstances of the individual Plaintiffs would be required, there was no basis for their stated plan to pursue numerous *statewide* collective or class actions in courts throughout the country. *Id.* at 1-2, 5. Specifically, KFC made clear that because Plaintiffs' plan was nothing more than an impermissible attempt "to have it both ways," *id.* at 1 (explaining the intrinsic conflict between Plaintiffs' representations about individualized restaurant-by-restaurant differences and the claim that Plaintiffs are similarly situated on a statewide basis), they would be judicially estopped from carrying it out (*id.* at 6). *See also id.* at 2 (repeated re-litigation of the "similarly situated" issue in nu-

7

merous courts "would impose an unnecessary burden on the federal court system, as well as on [KFC]").

In reply, Plaintiffs continued to press for decertification and transfers to new district courts but attempted to distance themselves from their prior, candid acknowledgements of predominating restaurant-by-restaurant variations. <u>Parler</u>, Dkt. No. 156. Consistent with KFC's assessment that they were trying to play fast and loose with the courts and to prejudice KFC by attempting "to have it both ways," Plaintiffs argued that although this Court should grant their Motion for Decertification based exclusively on the restaurant-by-restaurant variations they had presented to the Court, they should not be estopped from denying those very same variations in subsequent litigation. <u>Id.</u> at 5-7.

Plaintiffs' attempt in their reply to disavow and recharacterize their earlier representations fell flat as a matter of law and logic. In the Report and Recommendation ("R & R"), this Court stated succinctly: "In this litigation, collective certification was previously granted, and the *plaintiffs*, rather than the defendants, now move for decertification. Because their job duties differ on a restaurant-by-restaurant basis, the plaintiffs concede that they are not similarly situated." <u>Parler</u>, Dkt. No. 169 at 2 (emphasis by this Court). Based on Plaintiffs' representations, the R & R recommended that Plaintiffs' Motion for Decertification be granted.[5] *Id.* The Court approved the R & R, recognizing that it was based on Plaintiffs' representations. <u>Parler</u>, Dkt. No. 180 at 2.

---

[5]    The R & R, however, recommended that Plaintiffs' request for transfers to twenty-nine new district courts be denied because Plaintiffs failed to "adequately show[] a common policy, unique to employees in any particular state, that would justify their reorgani-
*(Continued on next page…)*

As part of the *New Hampshire* judicial estoppel analysis, courts also "regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position"—*i.e.*, whether there has been "judicial acceptance" of the position. 532 U.S. at 750. "Judicial acceptance" refers to a party's "success[] in getting the first court to accept the position." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982), *cited with approval in New Hampshire*, 532 U.S. at 750. "A party need *not* finally prevail on the merits in the first proceeding. Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Id.* at 599 n.5 (emphasis added); *accord, e.g., In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999).

It is evident that this Court in <u>Parler</u> accepted Plaintiffs' representations that Plaintiffs were not similarly situated because their job duties vary from restaurant to restaurant. First of all, it is indisputable that these Plaintiffs successfully persuaded this Court to accept their earlier position, as this Court granted Plaintiffs the relief *they* requested, decertification of the collective action in <u>Parler</u>. In addition, Plaintiffs not only elected to move for decertification, but also chose to base their request for relief upon their representations that their job duties vary restaurant-by-restaurant, not state-by-state, and the R & R and subsequent Order decertifying the class were based explicitly on those representations. In the R & R, this Court explained, "In this litigation, collective certification was

zation into state-by-state groups." <u>Parler</u>, Dkt. No. 169 at 3-4. Indeed, the R & R observed that "it is probable ... that such groups would not even qualify for *conditional* certification." *Id.* at 4 (emphasis added); *see also id.* at 5 ("[T]here is inadequate factual support and no legal support for this remedy.").

previously granted, and the *plaintiffs*, rather than the defendants, now move for decertification.  Because their job duties differ on a restaurant-by-restaurant basis, the plaintiffs concede that they are not similarly situated."  Parler, Dkt. No. 169 at 2 (emphasis by the Court); *see also* Parler, Dkt. No. 180 (adopting the recommendation and noting that it was based on "statements made by plaintiffs in their papers," not "any factual finding," and that "[t]hose statements speak for themselves.").

Moreover, as a logical matter, because Plaintiffs relied "exclusively" on these restaurant-by-restaurant variations (Parler, Dkt. No. 137 at 1-2), and because the Court stated that it "was not ... making any factual finding" (Parler, Dkt. No. 180 at 2; *see also* Parler, Dkt. No. 169 at 3 ("this Court declines ... to make findings")), the Court necessarily accepted Plaintiffs' representations that their duties vary by restaurant.  At the time of the court's ruling, the representations and record before the Court, deliberately selected by Plaintiffs and agreed to by KFC, reflected only restaurant-by-restaurant variations.  As such, this record was the only basis for the Order decertifying the action.  *See* Parler, Dkt. No. 169 at 3-4 (stating that "plaintiffs did offer evidence supporting their reorganization into state-by-state groups" or "adequately show[] a common policy, unique to employees in any particular state, that would justify [such a] reorganization").

Thus, because the Court necessarily accepted Plaintiffs' prior position that decertification was warranted because Plaintiffs were not similarly situated because their job duties vary restaurant-by-restaurant, not state by state, the second *New Hampshire* factor is also satisfied, and Plaintiffs should be judicially estopped from seeking to proceed collectively or on behalf of a class.

**C.    Plaintiffs will impose an unfair detriment on KFC if they are not es-
topped from asserting inconsistent positions.**

While it is not a formal prerequisite to a claim of judicial estoppel, courts fre-
quently consider a third factor: whether the party asserting an inconsistent position would
derive an unfair advantage or impose an unfair detriment on the opposing party. *See New
Hampshire*, 532 U.S. at 751; *Alternative Sys. Concepts*, 374 F.3d at 33. "However, as a
practical matter, where the first two components have been satisfied, this third factor is
virtually certain to be present, as judicial acceptance of a party's position will ordinarily
redound to the benefit of that party." *Otis v. Arbella Mut. Ins. Co.*, 824 N.E. 2d 23, 30
(Mass. 2005). Therefore, it is ordinarily unnecessary to consider the third factor sepa-
rately once it is shown that, as in this case, a party has maintained successfully one posi-
tion and then taken a contradictory position in search of some new advantage. *Id.*; *ac-
cord, e.g., Alternative Sys. Concepts*, 374 F.3d at 33 ("Judicial acceptance and partisan
benefit normally are two sides of the same coin (after all, it is unlikely that a party will
advance a particular position unless that position benefits its cause)."). Accordingly, this
Court's acceptance of Plaintiffs' inconsistent position in <u>Parler</u> should, of its own force,
end the inquiry and establish that judicial estoppel is appropriate.

To the extent, if any, that a detriment must be shown, that detriment (and the cor-
responding advantage to the other party) may derive from either the initial position taken
or the subsequent, inconsistent position. *See, e.g., New Hampshire*, 532 U.S. at 755
("Having convinced this Court to accept one interpretation ..., and having *benefited* from
that interpretation, New Hampshire [is] now [estopped from urging] an inconsistent in-

terpretation to gain an *additional advantage* at Maine's expense.") (emphases added). With respect to the former, although the initial benefit may have been *obtained* legitimately, it would be inherently unfair to allow the party to *retain* that benefit *and* repudiate the very position that supported it. Put simply, parties "cannot have their cake and eat it too." *E.g., In re Superior Crewboats, Inc.*, 374 F.3d 330, 333 (5th Cir. 2004). And with respect to the latter, it has been observed that such cases implicate even "more than affront to judicial dignity," "[f]or intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Scarano*, 203 F.3d at 513.

In this case, the affront to judicial dignity and the unfair detriment to KFC is that, if Plaintiffs are not estopped, the court system and KFC will be forced to address at least twenty-four times the very question—whether Plaintiffs are "similarly situated"—on which this Court has already ruled at Plaintiffs' request and based on Plaintiffs' representations of restaurant-to-restaurant variations. *See supra* note 1. Particularly in light of the evident weakness of Plaintiffs' case both as to class certification[6] and on the merits,[7] Plaintiffs' inconsistency would impose an enormous detriment on KFC: by Plaintiffs hav-

---

[6]     As the R & R in <u>Parler</u> observed, "it is probable … that [Plaintiffs] would not even qualify for *conditional* certification." <u>Parler</u>, Dkt. No. 169 at 4 (emphasis added).

[7]     KFC's position on the merits of Plaintiffs' claims is supported by longstanding and well-settled precedent and Department of Labor regulations. *See generally Murray v. Stuckey's, Inc.*, 939 F.2d 614 (8th Cir. 1991); *Donovan v. Burger King Corp.*, 675 F.2d 516 (2d Cir. 1982); *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir. 1982); 29 C.F.R. Part 541; 69 Fed. Reg. 22121 (Apr. 23, 2004) (citing *Murray* and the *Burger King* cases with approval).

12

ing first used the conditional certification procedure in <u>Parler</u> to assemble a nationwide group of Plaintiffs, and then obtained decertification by representing that they are not similarly situated and that their duties vary from restaurant to restaurant, Plaintiffs' repudiation of that position would increase exponentially KFC's cost of defense (which already easily exceeds $1,000,000, *see* <u>Parler</u>, Dkt. No. 187 at 3) by forcing it to relitigate the "similarly situated" issue twenty-four or more times. *Cf.* Randy J. Kozel & David Rosenberg, *Solving the Nuisance-Value Settlement Problem: Mandatory Summary Judgment*, 90 VA. L. REV. 1849, 1856 (2004) ("if a plaintiff can file a suit at a cost cheaper than the cost to the defendant of defeating that suit, then there is the potential for a nuisance-value settlement"). Plaintiffs' attempt to force the court system to bear the concomitant burden of addressing as many class certification motions—despite Plaintiffs' prior representations that class certification is *not* appropriate—would likewise be an affront to judicial dignity.

## II.   Plaintiffs Are Also Equitably Estopped From Claiming That They Are Similarly Situated.

The doctrine of equitable estoppel provides an independent basis for estopping Plaintiffs from claiming that they are similarly situated. "Equitable estoppel prevents a party from [1] denying a state of facts that he has previously asserted to be true if the party to whom the representation was made [2] has acted in reliance on the representation and [3] will be prejudiced by its repudiation." *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 (8th Cir. 1987); *accord, e.g., Amtrust, Inc.*, 388 F.3d at 601. Unlike the doctrine of judicial estoppel, which is intended to protect the integrity of the judicial system itself,

the purpose of equitable estoppel is to prevent litigants from being prejudiced by an opponent's inconsistency. *Total Petroleum*, 822 F.2d at 737 n.6. This distinction explains why judicial estoppel does not require the proof of prejudice and reliance needed to establish equitable estoppel. *Id.*; *see also, e.g., Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605, 609 (8th Cir. 1993) (same).

Here, Plaintiffs are attempting to "deny a state of facts that [they] previously asserted to be true"—namely, their prior representations that they were not similarly situated based on restaurant-to-restaurant (not state-by-state) variations in their duties. *See* Part I.A, *supra* (discussing the extensive record of Plaintiffs' representations on restaurant-by-restaurant differences and the need for individualized determinations). Second, KFC acted in explicit reliance on their prior concessions. KFC was clear in its response that it agreed that decertification was appropriate *because* Plaintiffs had chosen to concede that they were not similarly situated *because* their duties varied from restaurant to restaurant. <u>Parler</u>, Dkt. No. 151 at 1. Finally, KFC would be severely prejudiced by Plaintiffs' "repudiation" of their prior representations because of the enormous incremental costs it would incur in defending the same issue twenty-four or more times following Plaintiffs' concession in <u>Parler</u> that they are not similarly situated because their duties vary from restaurant to restaurant. *See* Part I.C, *supra*. Accordingly, equitable estoppel applies in this case and provides an independent basis for granting this Motion.

## <u>CONCLUSION</u>

Plaintiffs' allegation in this case that they are "similarly situated" and effort to maintain a collective action and a class action are clearly inconsistent with their represen-

tations in <u>Parler</u>. This Court accepted Plaintiffs' <u>Parler</u> representations that their own job duties vary substantially "from restaurant to restaurant." Further, Plaintiffs' inconsistency would be a clear affront to the judicial system and impose an unfair detriment on KFC. Accordingly, because Plaintiffs are judicially and equitably estopped from proceeding collectively or on behalf of a class, this Court should enter an order denying certification of a class or collective action, striking the relevant allegations in the Complaint, and dismissing all plaintiffs other than the lead Plaintiff, Mr. Ackerman, from this action.

Dated:  July 20, 2007

DORSEY & WHITNEY LLP

By:  s/ Robert R. Reinhart
Robert R. Reinhart, #0090566
Gabrielle D. Mead, #341575
50 South Sixth Street, Ste. 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

Of Counsel:
Robert P. Davis
Diana L. Hoover
MAYER, BROWN, ROWE & MAW LLP          Attorneys for Defendant KFC Corporation
1909 K Street N.W.
Washington, D.C.  20006
Telephone:  (202) 263-3000

15

# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA



EXHIBIT

"D-1"

| | |
|---|---|
| CHRISTIAN PARLER Carmen Brooks, Arturo Neyra, Linda Rodriguez, David Thames, Thomas Wellman, and Troy Williams, individually and on behalf of others similarly situated, | Court File No. 05-2198 PJS/JJG |
| | **DEFENDANT'S MOTION FOR AN ORDER DECLARING THAT PLAINTIFFS HAVE WAIVED THEIR RIGHT TO ARBITRATE AND ENJOINING PLAINTIFFS FROM PURSING ARBITRATION** |
| Plaintiffs, | |
| vs. | |
| KFC Corporation, | |
| Defendant. | |

Defendant KFC Corporation hereby moves the Court for an Order Declaring That Plaintiffs Have Waived Their Right To Arbitrate And Enjoining Plaintiffs From Pursing Arbitration. Defendant's Motion is based upon all the files, records, and proceedings, the memorandum and other supporting documents to be submitted in connection with this motion.

Dated:  June 28, 2007

DORSEY & WHITNEY LLP


   /s/ Robert R. Reinhart   

By:  Robert R. Reinhart #0090566
     Gabrielle D. Mead #0341575
     Suite 1500, 50 South Sixth Street
     Minneapolis, MN 55402-1498
     Telephone:  (612) 340-2600

     Robert P. Davis (*admitted pro hac vice*)
     Robert C. Varnell (*admitted pro hac vice*)
     MAYER, BROWN, ROWE & MAW LLP
     1909 K Street N.W.
     Washington, D.C.  20006
     Telephone:  (202) 263-3000

     *Attorneys for Defendant KFC Corporation*

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA



| | |
|---|---|
| CHRISTIAN PARLER Carmen Brooks, Arturo Neyra, Linda Rodriguez, David Thames, Thomas Wellman, and Troy Williams, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>KFC Corporation,<br><br>    Defendant. | Court File No. 05-2198 PJS/JJG<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR AN ORDER DECLARING THAT PLAINTIFFS HAVE WAIVED THEIR RIGHT TO ARBITRATE AND ENJOINING PLAINTIFFS FROM PURSUING ARBITRATION** |

## INTRODUCTION AND SUMMARY OF THE MOTION

For the reasons set forth below, KFC requests an Order (i) declaring that the 324 Plaintiffs who opted into this action (out of a total of 993 opt-in Plaintiffs) in late 2005 and early 2006, but who now have filed arbitration demands with the American Arbitration Association ("AAA"), have waived their right to arbitrate; (ii) enjoining Plaintiffs from pursuing arbitration of their claims; and (iii) staying the August 3, 2007 effective date of the Court's Order dismissing all opt-in Plaintiffs without prejudice (Dkt. No. 180) to the extent necessary to address this Motion and enforce the Court's ruling.[1]

Twenty-one months ago, Plaintiffs commenced this putative nationwide collective action, alleging that KFC had violated the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 201 *et seq.*, by failing to pay overtime to Assistant Unit Managers ("AUMs") at its restaurants. Based upon the relatively lenient standard for conditional certification available in the judicial forum, KFC stipulated to conditional certification of a nationwide class. Plaintiffs then used this process to send notice to more than 3,500 potential class members using contact information provided by KFC, and 993 AUMs, including the 324 who now demand arbitration, opted to assert claims for overtime through this action. The parties then conducted extensive discovery at considerable time and expense.

In October 2006, after using the judicial forum to secure its nationwide client base, Plaintiffs abruptly reversed course and asked this Court to decertify this action and

---

[1]    The Court entered the dismissal order on June 4, 2007, but stayed it for sixty days. Dkt. No. 180 at 3.

transfer their claims to twenty-nine new federal district courts. This Court appropriately

denied Plaintiffs' unprecedented mass transfer request as lacking any factual or legal

basis. Now, only after first abandoning their attempted nationwide action and then

failing to secure transfers to new federal district courts, and after making extensive use of

the liberal federal discovery rules not available in arbitration, 324 Plaintiffs have made

another sudden U-turn and filed 324 individual demands for arbitration with the AAA,

requesting arbitration in more than 175 cities throughout the United States.[2]

As explained below, these Plaintiffs long ago waived their right to arbitrate by

initiating and vigorously pursuing litigation in this Court. Because waiver is clearly

established, KFC requests that this Court rule that Plaintiffs have waived their right to

arbitrate and enjoin them from pursuing arbitration.

## **ARGUMENT**

### I.    **Plaintiffs Waived Their Right To Arbitrate By Extensively Litigating Their Claims Before This Court At Great Expense And Prejudice To KFC.**

Only weeks ago, the Eighth Circuit reiterated that a party waives its right to arbi-

trate if it "(1) knew of an existing right to arbitration; (2) acted inconsistently with that

right; and (3) prejudiced the other party by these inconsistent acts." *Lewallen v. Green*

*Tree Servicing, LLC,* --- F.3d ---, 2007 WL 1583876, at *3 (8th Cir. June 4, 2007).[3]

---

[2]    In the last three weeks, Plaintiffs have also filed twenty-five lawsuits in state and federal courts across the country, most styled as putative collective or class actions. Plaintiffs' counsel has advised KFC that two additional lawsuits will be filed in the near future. Affidavit of Robert C. Varnell ("Varnell Aff.") ¶ 6.

[3]    Recent cases designated for publication for which official citations are not yet available and unpublished cases are attached to the Varnell Aff. as Exhibits "I" to "N".

Here, all three requisites are satisfied. Plaintiffs knew they had a right to arbitrate because they signed arbitration agreements at the outset of their KFC employment and because Plaintiffs' counsel learned of those agreements early on in this case. They also "acted inconsistently with that right" by invoking and then vigorously engaging in the litigation process as briefly outlined above and discussed in greater detail below. Finally, their actions have substantially prejudiced KFC, as the parties have already engaged in extensive discovery, including more than forty depositions, and briefed and argued several significant motions, all of which would have been unnecessary in arbitration. Moreover, while these 324 Plaintiffs pursued this action, the AAA increased the non-refundable, per-arbitration filing fee that it charges employers from $625 to $900, meaning that KFC now faces initial arbitration fees alone totaling nearly $300,000—almost $90,000 more than if Plaintiffs requested arbitration when they opted into this action in late 2005 and early 2006—not to mention hundreds of thousands of dollars for AAA administrative expenses and arbitrators' fees that KFC would be forced to incur if Plaintiffs were allowed to shift to the arbitral forum at this late date. In short, by forcing KFC to spend almost two years and well over $1,000,000 defending this action in this Court before ever surfacing the possibility of arbitration, Plaintiffs have waived the right to arbitrate. Varnell Aff. ¶¶ 5 & 13.

### A.    Plaintiffs knew of their right to arbitrate.

Plaintiffs cannot deny their awareness of their right to arbitrate. First, Plaintiffs knew that they had a right to arbitrate because they signed arbitration agreements at the outset of their KFC employment. It is black-letter law that one "who signs or accepts a

written contract is conclusively presumed to know its contents and to assent to them."
*Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (internal quotation
marks and ellipses omitted). This rule applies to arbitration agreements with equal force.
*Id.*; *see also N & D Fashions v. DHJ Indus., Inc.*, 548 F.2d 722, 727-28 (8th Cir. 1976).
In any event, KFC produced to Plaintiffs' counsel the arbitration agreement for the
named plaintiff, Christian Parler, in November 2005—indeed, it was one of the very first
documents produced in this case—and the remaining personnel files containing these
Plaintiffs' arbitration agreements were produced by summer 2006. Varnell Aff. ¶ 1 &
Ex. A thereto. Thus, even after KFC provided Plaintiffs with copies of their signed
agreements, Plaintiffs pushed forward with litigation. Accordingly, the first requisite of
the Eighth Circuit's waiver test is easily established.

**B.    Plaintiffs "acted inconsistently" with the right to arbitrate.**

In *Lewallen*, the Eighth Circuit defined the extent of participation in litigation that
is inconsistent with a subsequent demand for arbitration:

> A party acts inconsistently with its right to arbitrate if the party "substan-
> tially invokes the litigation machinery before asserting its arbitration right."
> A party substantially invokes the litigation machinery when, for example, it
> files a lawsuit on arbitrable claims, engages in extensive discovery, or fails
> to move to compel arbitration and stay litigation in a timely manner.[4]

The Plaintiffs who now demand arbitration took each of these three steps that the
Eighth Circuit deemed independently sufficient to establish a substantial invocation of
the litigation machinery. First, they all filed consents explicitly electing to join this

---

[4]     *Lewallen*, --- F.3d at ---, 2007 WL 1583876 at *3 (brackets omitted) (quoting *Rit-
zel Commc'ns v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993)) (quoting,
in turn, *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 559 F.2d 268, 269 (5th Cir. 1977)).

litigation in Minnesota. Second, over the course of the next year, Plaintiffs used the liberal federal discovery rules to engage in extensive discovery, much of it related to issues not relevant in arbitration. *See generally* Varnell Aff. ¶¶ 8-13. Finally, Plaintiffs also engaged in extensive motion practice, including a Motion to Dismiss KFC's parent company, Yum! Brands, Inc.;[5] a discovery motion related to privilege issues arising out of their deposition of a Yum! in-house counsel;[6] a Motion to Amend the Complaint to add class claims under eight different state wage and hour laws;[7] and, ultimately, Plaintiffs' own Motion for Decertification and Motion to Add Plaintiffs.[8] Then, even after deciding to abandon the nationwide collective action they initiated, Plaintiffs asked to have their claims transferred to twenty-nine other district courts (Dkt. Nos. 135 & 137), demonstrating their continued efforts and desire to use "the litigation machinery." At no point during this lengthy and expensive process did they express any interest in arbitration. Varnell Aff. ¶ 5. Thus, Plaintiffs have thus substantially invoked the

---

[5]    Yum! moved to dismiss for lack of personal jurisdiction and on the ground that it was not Plaintiffs' employer under the FLSA. *See* Dkt. Nos. 2 & 10.

[6]    The issue was resolved on letter briefs and a telephonic hearing with Magistrate Judge Graham. Dkt. Nos. 147, 149, & 150.

[7]    Plaintiffs' Motion to Amend raised various issues of subject matter jurisdiction and discretionary supplemental jurisdiction, which the parties briefed (*see* Dkt. Nos. 97 & 111) and argued (Dkt. No. 115), and which Magistrate Judge Graham addressed in detail in a written opinion (Dkt. No. 118).

[8]    The parties fully briefed and argued this motion. *See* Dkt. Nos. 137, 151, & 156. Magistrate Judge Graham also addressed this motion in detail in a written opinion. Dkt. No. 169. Plaintiffs subsequently objected to certain portions of Judge Graham's recommended order (Dkt. No. 170), requiring further response from KFC (Dkt. No. 173), and a final ruling from this Court (Dkt. No. 180).

litigation machinery in a number of ways, any one of which would independently satisfy

the Eighth Circuit's test laid out in *Lewallen*.

    *Lewallen* noted that, to safeguard its right to arbitration, "a party must 'do all it

could reasonably have been expected to do to make the earliest feasible determination of

whether to proceed judicially or by arbitration.'" --- F.3d at ---, 2007 WL 1583876, at *4

(quoting *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 391 (7th Cir.

1995)).  Applying this principle, the Court noted that "Green Tree could have requested

arbitration approximately eleven months sooner than it did," and held this delay

"inconsistent with its right to arbitrate." *Id.* at *5.  Similarly, in *Stifel, Nicolaus & Co. v.

Freeman*, 924 F.2d 157, 158 (8th Cir. 1991), the Eighth Circuit found a six-month delay

in moving to compel arbitration, coupled with engaging in discovery on arbitrable claims,

inconsistent with the right to arbitrate. *See also S & H Contractors, Inc. v. A. J. Taft Coal

Co., Inc.,* 906 F.2d 1507, 1514 (11th Cir. 1990) (eight-month delay between filing of

complaint and demand for arbitration, during which party took five depositions and

opponent filed two motions, was inconsistent with right to arbitrate).  Here, by way of

comparison, twenty-one months passed from the time this litigation was filed until 324

Plaintiffs requested arbitration.

    Of course, "invoking the litigation machinery" is a matter of conduct as well as the

passage of time.  Thus, the Eighth Circuit found in *Lewallen* that "Green Tree's actions

in serving discovery requests on Lewallen … were inconsistent with its right to arbitrate."

--- F.3d at ---, 2007 WL 1583876, at *6.  Green Tree's requests included "lengthy

interrogatories and requests for production of documents," and the Court noted that

"Green Tree also sought an extension of time to respond to Lewallen's discovery requests." *Id.* at *6; *see also S & H Contractors*, 906 F.2d at 1514 (five depositions). Here, Plaintiffs utilized the discovery mechanisms of the Federal Rules to a far greater extent: Plaintiffs served, and KFC responded to, multiple sets of document requests and interrogatories, requiring KFC, at great expense, to produce approximately *sixty thousand* pages of documents and approximately *4.4 million* electronic records. Varnell Aff. ¶ 8. In addition, there have been, at great expense, over forty depositions in seventeen different cities. *Id.* ¶ 9.

Finally, as noted above, Plaintiffs invoked the litigation machinery by filing, opposing, briefing, and/or arguing a series of significant motions. *See supra* notes 5-8. Here, too, Plaintiffs set a new standard for inconsistency with arbitration. *Compare with, e.g., S & H Contractors*, 906 F.2d at 1514 (plaintiff waived its right to arbitrate by, *inter alia*, allowing defendant to file two motions before it moved to compel arbitration); *Bezzard v Securitas Sec., Inc.*, 2006 WL 297749, at *2-*4 (E.D. Ark. Feb. 8, 2006) (defendant waived its right to arbitrate by responding to plaintiff's motion to amend complaint before moving to compel arbitration).

In sum, the course Plaintiffs have charted could not have diverged further from arbitration: Professing a desire to pursue a nationwide collective action in this Court, Plaintiffs initiated this litigation, took advantage of the FLSA notice process to enlist 993 present and former KFC AUMs from across the United States to join this lawsuit, took advantage of the liberal discovery provisions of the Federal Rules of Civil Procedure to obtain discovery not available in arbitration, and then, again on their own initiative,

abruptly switched course to move to the arbitral forum. In light of this history, there can

be no dispute that Plaintiffs acted inconsistently with their known right to arbitrate—

indeed, that they have done so to an extent far exceeding the threshold defined by case

law in the Eighth Circuit and other courts.

> **C.    KFC will be greatly prejudiced by these Plaintiffs' inconsistent acts and delay, making a finding of waiver particularly appropriate.**

KFC also easily establishes prejudice. KFC has been required to bear substantial

expense related to the extensive discovery and motion practice outlined above that it

would not have incurred had Plaintiffs timely elected to arbitrate their claims. In

addition, AAA's per-arbitration employer filing fee is now almost 50% higher than it was

when those Plaintiffs chose to join this action instead of proceeding directly to

arbitration. Finally, as a matter of common sense, there can be no doubt that Plaintiffs'

litigation conduct has been inherently prejudicial to KFC. Plaintiffs did not merely select

a judicial forum initially; they carried their lawsuit all the way through the close of

discovery and beyond and used this litigation to generate 993 litigants—including the 324

who now seek to bring arbitration actions more than 175 cities throughout the United

States.

> **1.    The extensive discovery and motion practice in this Court prejudiced KFC.**

The Eighth Circuit has observed that "[p]rejudice results when, *inter alia*, parties

use discovery not available in arbitration … or … arbitration would require a duplication

of efforts." *Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir. 2003)); *accord Lewallen*, ---

F.3d at ---, 2007 WL 1583876 at *6. The cost of such discovery, including such items as

attorneys' fees, travel expenses, and court reporters' and videographers' fees, will also support a finding of prejudice. *See, e.g., Robinson v. Food Serv. of Belton, Inc.*, 415 F. Supp. 2d 1221, 1224-26 (D. Kan. 2005) (attorneys' fees and transcript costs relating to depositions); *Paw Paw's Camper City, Inc. v. Hayman*, --- So.2d ---, 2007 WL 1454442, at *5 (Ala. May 18, 2007) (deposition-related costs). The greater the accumulated effort and expense, the more easily prejudice is found. *See, e.g., Bezzard*, 2006 WL 297749, at *2-*4 (plaintiff established prejudice under Eighth Circuit precedent where defendant delayed seeking arbitration for six months, litigated the issue of whether plaintiff had waived her right to a jury trial, and proposed a discovery schedule); *Freiburger v. Snap-On Tools Co.*, 2002 WL 32172381, at *2-*3 (N.D. Iowa Feb. 20, 2002) (plaintiff established prejudice under Eighth Circuit precedent where defendant delayed for eighteen months in seeking arbitration, during which time it removed case to federal court, answered the complaint and plaintiff's interrogatories, took the plaintiff's deposition, and attended another deposition); *Eagle Traffic Control, Inc. v. James Julian, Inc.*, 945 F. Supp. 834, 835 (E.D. Pa. 1996) (prejudice established where the parties engaged in extensive discovery, including ten depositions, and litigated several discovery motions).

As noted, the parties have engaged in extensive discovery. Much of this discovery was driven by the nationwide nature of Plaintiffs' lawsuit and the need to address the question whether Plaintiffs are "similarly situated." Indeed, after Plaintiffs further used the judicial process to amend their complaint to add seven putative state-law class actions, KFC had to depose all seven putative class representatives located around the

country and propound a second set of written discovery requests addressed specifically to the putative state-law class representatives and issues related to class-certification. Varnell Aff. ¶ 12. While an arbitrator might have allowed some discovery regarding the particulars of an individual AUM's claim, it would not have been as extensive as that available in this Court, nor would it have needed to delve into class-related issues. *E.g.*, *Paw Paw's Camper City*, --- So.2d at ---, 2007 WL 1454442, at *5 (assuming, in the absence of any indication to the contrary, that "the arbitrator would have exercised its discretion in favor of allowing no discovery"); Richard A. Bales, COMPULSORY ARBITRATION: THE GRAND EXPERIMENT IN EMPLOYMENT 150 (1997) ("Discovery is generally less available in arbitration than in litigation….").

For example, in an individual arbitration, there would have been no need for Plaintiffs to depose multiple KFC executives or conduct discovery on matters such as corporate structure or information processes. In another recent case in this District, Plaintiffs' counsel here readily acknowledged the cost and significance of such discovery. *See West v. Border Foods, Inc.*, 2007 WL 1725760, at *1 (D. Minn. June 8, 2007) (noting Nichols Kaster & Anderson's contention "that the parties conducted significant discovery regarding liability, corporate structure, payroll processes, information systems, and hours worked"). KFC agrees that such discovery was a significant burden.

Nor would KFC have had any incentive to incur the expenses necessary to depose an individual AUM claimant in advance of a one-day, small-stakes arbitration hearing on the AUM's individual wage-and-hour claim. In contrast, as a result of Plaintiffs' decision to pursue their claims in court, over forty depositions have been taken in

seventeen different cities across the United States at great expense to KFC (Varnell Aff. ¶ 9); none of these depositions would have been necessary in arbitration. The costs associated with such depositions were substantial. For example, KFC's court reporter and videographer costs alone totaled over $73,000. *Id.* ¶ 10. That, of course, does not even include the far more significant attorneys' fees and travel costs associated with these depositions. *Id.* Because these costs would not have been incurred in arbitration, KFC would be prejudiced if Plaintiffs were permitted to pursue arbitration at this late date.[9]

*See, e.g., Huntington Bank v. Merrill Lynch, Pierce, Fenner & Smith,* 77 F.3d 479 (table), 1996 WL 46808, at *3-*4 (5th Cir. Jan. 15, 1996) (unpublished) (prejudice established where plaintiff filed a lawsuit and took five depositions rather than immediately seeking a court order requiring arbitration). As the Eleventh Circuit put it in a case involving far less extensive discovery and litigation-related activity than is at issue here, "[s]ignificant prejudice ... may be inferred from the extent of discovery in this case." *Stone v. E.F. Hutton & Co.,* 898 F.2d 1542, 1544-44 (11th Cir. 1990) (defendant moved to compel

---

[9]    Sara Ramos, one of the Plaintiffs now demanding arbitration, presents a particularly clear and egregious instance of prejudice. After counsel for KFC traveled from Washington, DC, to Houston, Texas, Ms. Ramos simply failed to show up for her duly noticed deposition, which KFC had already rescheduled once at Plaintiffs' request. Varnell Aff. ¶ 11 & Exs. F & H thereto. When KFC sought to re-notice her deposition, Plaintiffs' counsel advised: "[Ms. Ramos] will not communicate with us about her deposition. At this point we have made every effort to get her to appear and are unable to confirm her appearance. I do not want to waste the attorneys' time traveling to her deposition when it seems clear she will not attend." *Id.* & Ex. G thereto. KFC responded: "Given Ms. Ramos' unwillingness to cooperate in discovery, Defendant requests that she withdraw from the litigation, and we reserve our right to seek her withdrawal, as necessary." *Id.* Although Plaintiffs' counsel promised to "send her a withdrawal form," Ms. Ramos never withdrew and now, after refusing to show up for her deposition or even communicate with her attorneys, has apparently decided that she would like to give arbitration a try. *Id.* & Exs. G & B thereto.

arbitration less than two months before discovery closed and after a twenty-month delay, during which time it had deposed the plaintiff and answered multiple discovery requests and both parties had scheduled additional depositions).

Likewise, substantial costs relating to motion practice (*see supra* notes 5-8) would not have been incurred in arbitration. A single-claimant arbitration would have involved a straightforward assessment of the claimant's duties and whether the claimant was properly classified as exempt from the FLSA's overtime requirements. *See Lewallen,* --- F.3d at ---, 2007 WL 1583876, at *6 ("because they have had to litigate the motion to compel arbitration in the middle of [judicial] proceedings instead of earlier, the parties have been deprived of arbitration's main purpose: efficient and low-cost resolution of disputes") (internal quotation marks omitted). It certainly would *not* have required the substantial legal research necessary to brief Yum!'s Motion to Dismiss, Plaintiffs' Motion to Amend the Complaint, and Plaintiffs' Motion for Decertification and to Add Plaintiffs, not to mention preparation for and travel to hearings on Plaintiffs' motions. *See, e.g., S & H Contractors,* 906 F.2d at 1514 (prejudiced established where, during eight-month delay, party filed two motions and took five depositions); *Huntington Bank,* 1996 WL 46808, at *3-*4 (prejudice established where plaintiff filed a lawsuit and opposed various motions filed against it rather than immediately seeking to compel arbitration).

## 2. The nationwide collective action pursued by Plaintiffs compounds the prejudice suffered by KFC.

KFC has thus established ample prejudice of the types identified in the many cases discussed above that find waiver—namely, substantial discovery that would be wasted or unnecessary in arbitration and motions and other litigation-related activity that would never have occurred had Plaintiffs timely sought arbitration. While this alone is more than adequate to establish waiver, it bears emphasis that the prejudice in this case is necessarily compounded by the nationwide, collective nature of the proceedings that these Plaintiffs so long tried to pursue. Recognizing that, at the notice-stage of FLSA cases, courts apply a "fairly lenient standard" that "typically results" in conditional certification and distribution of notice upon only a "modest factual showing" of similarity, *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (internal quotation marks omitted), KFC agreed to stipulate to conditional certification. Dkt. No. 51. Having obtained the benefit of the FLSA's opt-in procedural mechanism, Plaintiffs enlisted 993 Plaintiffs to join this collective action, and KFC pursued discovery with an eye toward a motion to decertify the class and/or a motion for summary judgment based on the well-settled case law that assistant managers in the restaurant industry such as Plaintiffs are exempt from the FLSA's overtime requirements.[10] While arbitration might have been an efficient, cost-effective method of dispute resolution at one point, that is no longer the case now that KFC has invested enormous amounts of time and resources

---

[10]     *See generally Murray v. Stuckey's, Inc.*, 939 F.2d 614 (8th Cir. 1992); *Donovan v. Burger King Corp.*, 675 F.2d 516 (2d Cir. 1982); *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir. 1982); 29 C.F.R. Part 541; 69 Fed. Reg. 22121 (Apr. 23, 2004) (citing *Murray* and the *Burger King* cases with approval).

toward a strategy that does not translate into arbitration. *See, e.g.,* Lewis L. Maltby, *Employment Arbitration and Workplace Justice*, 38 U.S.F. L. REV. 105, 113 (2003) ("Summary judgment in AAA [employment] arbitration is so rare as to be statistically insignificant.").

### 3. Plaintiffs' excessive delay has driven up the cost of arbitration itself.

The prejudice that KFC has suffered would be further compounded because arbitrating the 324 claims now will be considerably more costly than if Plaintiffs had promptly sought arbitration. AAA's current nonrefundable, per-arbitration employer filing fee, $900 per arbitration, took effect on July 1, 2006—well after Plaintiffs filed this lawsuit and the opt-in period had closed. *See* AAA Employment Dispute Resolution Rules (effective July 1, 2006). Prior to that time, the fee was only $625. *See* [Archived] National Rules for the Resolution of Employment Disputes (effective Jan. 1, 2004), Administrative Fee Schedule, *available at* http://www.adr.org/sp.asp?id=26405. Thus, in addition to any other increases in AAA administrative or arbitration fees, KFC would have to pay $291,600, which is $89,100 more in initial filing fees than had Plaintiffs initially pursued arbitration instead of litigation. Varnell Aff. ¶ 4. These initial fees are just that—initial—and do not include the much greater administrative costs and arbitrators' fees that would follow. Such "economic prejudice" caused by delay in seeking arbitration is itself sufficient to support a finding of waiver. *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26-27 (2d Cir. 1995).

**4.    Plaintiffs' abrupt change of course in seeking arbitration also weighs in favor of finding prejudice.**

Finally, the fact that it is Plaintiffs that now bring this motion for arbitration after filing and pursuing vigorously their claims in this Court also weighs heavily in favor of finding prejudice. More often than not in waiver cases, a defendant belatedly moves to compel arbitration of claims filed against it in court, and the court is understandably hesitant to find waiver simply because the defendant has taken preliminary steps to *defend* itself against a lawsuit. *See, e.g., Keytrade USA, Inc. v. AIN TEMOUCHENT M/V*, 404 F.3d 891, 897 (5th Cir. 2005). In contrast, "judicial due process concerns are heightened" when, as in this case, "it is the defendant who, having been hailed into court, is deprived of notice of the plaintiff's interest in arbitration." *Prudential-Bache Securities, Inc. v. Stevenson*, 706 F. Supp. 533, 535 (S.D. Tex. 1989) (cited with approval in *Stifel*, 924 F.2d at 159, in which the Eighth Circuit also noted, *inter alia*, that "a party's failure to assert a prelitigation demand for arbitration may contribute to a finding of prejudice because the other party has no notice of intent to arbitrate"); *see also Huntington Bank*, 1996 WL 46808, at *3 (prejudice established where "plaintiff chose to handle its dispute by filing a lawsuit instead of initiating the arbitration process" and "then chose to oppose the motions filed against it … rather than immediately seeking a court order referring its dispute to arbitration"). In such cases, where the "aggressor" in the litigation suddenly changes its mind and seeks arbitration, the leading treatise on

federal arbitration law has concluded that courts seem to view the prejudice requirement as "considerably weaker" and, in practice, may simply presume that prejudice exists.[11]

*    *    *    *    *

In sum, it cannot be disputed that KFC was prejudiced by Plaintiffs' delay in requesting arbitration. KFC spent almost two years and well over $1,000,000 defending this litigation, ostensibly a nationwide collective action on behalf of 993 AUMs, before Plaintiffs ever mentioned arbitration. Having remained completely silent concerning arbitration as the costs of litigation mounted, Plaintiffs have waived the right to invoke that forum. Moreover, in this Court, Plaintiffs utilized nationwide notice and the FLSA's opt-in procedure to bring together nearly 1000 litigants that they have now deployed strategically across the country, including in 324 individual arbitrations in more than 175 different cities. As a matter of common sense, it would be prejudicial to KFC—not to mention an unjustifiable burden on the court—to allow Plaintiffs to use a purported nationwide collective action to enlist clients before moving to the arbitral forum to pursue their claims. Arbitration might once have been a cheaper, more expeditious alternative to litigation. But almost two years into this lawsuit, that is no longer the case.[12] In light of the

---

[11]    2 Ian R. Macneil et al., FEDERAL ARBITRATION LAW: AGREEMENTS, AWARDS, AND REMEDIES UNDER THE FEDERAL ARBITRATION ACT § 21.3.2.1 & .1A (1999 supp.) (citing, among other examples, *Zwitserse Maatschappij van Levensverzkering en Lijfrente v. ABN Int'l Capital Markets Corp.*, 996 F.2d 1478 (2d Cir. 1993); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925-27 (3d Cir. 1992); *S & H Contractors*, 906 F.2d 1507; *Stevenson*, 706 F. Supp. 533; and *United States ex rel. DMI, Inc. v. Darwin Constr. Co.*, 750 F. Supp. 536, 538-39 (D.D.C. 1990)) .

[12]    Ironically, the arbitration agreement on which Plaintiffs now rely begins, "Because of, among other things, the delay and expense which result from the use of court systems, KFC and I agree to use confidential binding arbitration...." Varnell Aff., Ex. A. The

prejudicial trouble and expense to which they have put KFC in litigation, Plaintiffs have waived their right to arbitration.

## II.    KFC Is Entitled To  Declaratory and Injuncive Relief to Preclude Plaintiffs From Pursuing Arbitration.

As a necessary and logical concomitant to their authority under the FAA to compel arbitration when appropriate, federal courts possess the authority to enjoin pending arbitrations when the party pursuing arbitration lacks any legal right to insist upon it. *See e.g., Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.,* 643 F.2d 863, 868 (1st Cir. 1981) (Breyer, J.) ("to enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present"); *Am. Broad. Cos. v. Am. Fed'n of Television & Radio Artists,* 412 F. Supp. 1077, 1082 (D.N.Y. 1976) ("The concomitant of the power to enforce [an arbitration agreement] is to enjoin arbitration where an agreement therefore is absent."). The Eighth Circuit has recognized the proper exercise of this authority. *Nordin v. Nutri/System, Inc.,* 897 F.2d 339, 345-46 (8th Cir. 1990) ("[W]e affirm the district court's [preliminary] injunction [against proceeding with arbitration] because of the high probability of success on the merits, the likely threat of irreparable harm and the public interest in favor of enforcement of arbitration only where the parties have so agreed."). Courts have also granted declaratory judgments that a party is not obligated to participate

---

agreement thus contemplates that the parties will pursue arbitration in lieu of—*not* in addition to—"the delay and expense" of litigation.

in a pending arbitration.[13]  Both remedies are appropriate here because, as discussed above, Plaintiffs' pursuit of their claims in this court over the preceding twenty-one months constitutes a clear waiver of their right to arbitrate.

The record which demonstrating KFC's entitlement to a declaratory judgment and permanent injunction is fully before the Court.  In the event the Court concludes, however, that further factual development is required, then KFC requests a preliminary injunction against the pending arbitrations.  "A motion for a preliminary injunction requires the district court to consider four factors: (1) the probability of success on the merits, (2) the threat of irreparable harm to the movant, (3) the balance between the harm and the injury that granting the injunction will inflict on other interested parties, and (4) the public interest."  *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006).  For the reasons discussed in Part I, *supra*, KFC has demonstrated a high probability of success—indeed, that it will prevail—on the merits.

The second factor weighs heavily in favor of this relief because, if the AAA proceeds, the threat of irreparable harm to KFC is substantial.  The AAA has already billed KFC for $291,600 in *nonrefundable* filing fees ($900 for each of the 324 cases), with payment due June 29.  Varnell Aff. ¶ 4 & Ex. D thereto; *see also* AAA Rules, Costs of Arbitration (including AAA Administrative fees) ("A *nonrefundable* fee in the amount of $900 is payable in full by the employer....") (emphasis added).  Based on the AAA's re-

---

[13]    *See, e.g.*, *Wheat, First Secs., Inc. v. Green*, 993 F.2d 814 (11th Cir. 1993) (affirming district court's decision granting a declaratory judgment that broker was not bound by certain arbitration agreements or obligated to participate in pending arbitration proceedings).

cent letter, KFC anticipates that the AAA will suspend the pending arbitrations in light of this motion, but the AAA Rules provide no such assurance. *See id.*, Rule 47 (providing that "the AAA may suspend or terminate ... proceedings" as a result of nonpayment). If the AAA were to proceed, then, in the absence of a preliminary injunction, KFC would either have to (1) pay $291,600 in nonrefundable fees for arbitrations that should never occur or (2) run the risk that the AAA allows the arbitrations to go forward without KFC's participation, clearly another form of irreparable injury. Accordingly, a preliminary injunction would then be necessary to prevent irreparable harm to KFC.

With respect to the third factor, granting a preliminary injunction under those circumstances would not injure Plaintiffs. Since they joined this lawsuit in late 2005 and early 2006, Plaintiffs have shown no interest whatsoever in arbitration, preferring instead to pursue their claims in federal court and ultimately asking this Court to transfer their claims to other federal courts. Plaintiffs cannot possibly now contend that they will be injured if their arbitrations do not go forward immediately.

Finally, the only discernible "public interest" at issue is that parties be required to arbitrate *only when they are in fact legally obligated to do so. Cf. Nordin v. Nutri/System, Inc.*, 897 F.2d at 345-46. Thus, pending a final determination of the parties' rights with respect to arbitration, the only public interest involved in this case favors KFC.

In sum, in addition to granting permanent injunctive and declaratory relief in favor of KFC, the Court should, if necessary, preliminarily enjoin Plaintiffs from proceeding with arbitration because KFC is likely to prevail on the merits of its request and will suffer irreparable harm in the absence of such relief, because it is evident from Plaintiffs'

own conduct that they will not be injured by an injunction, and because the only discernible public interest weighs in favor of an injunction.

## CONCLUSION

KFC is entitled to an injunction enjoining Plaintiffs from proceeding with the arbitrations they have filed with the AAA and a declaratory judgment that Plaintiffs have waived their right to arbitrate. Given that this Court's prior Order dismissing all opt-in plaintiffs will become effective on August 3 (Dkt. No. 180), to the extent necessary, the Court should stay execution of that order until 30 days following final resolution of the present Motion.

Dated: June 28, 2007          DORSEY & WHITNEY LLP

                     /s/ Robert R. Reinhart
           By:  Robert R. Reinhart #0090566
                Gabrielle D. Mead #0341575
                Suite 1500, 50 South Sixth Street
                Minneapolis, MN 55402-1498
                Telephone: (612) 340-2600

                Robert P. Davis (*admitted pro hac vice*)
                Robert C. Varnell (*admitted pro hac vice*)
                MAYER, BROWN, ROWE & MAW LLP
                1909 K Street N.W.
                Washington, D.C. 20006
                Telephone: (202) 263-3000

                *Attorneys for Defendant KFC Corporation*



# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

Ray Ackerman et al. on behalf of
themselves and others similarly
situated,

                Plaintiffs,

vs.

KFC Corporation,

                Defendant.

Case No.: 0:07-cv-02656-PJS-JJG

**DEFENDANT'S NOTICE OF MOTION
FOR AN ORDER DENYING
CERTIFICATION OF A CLASS OR
COLLECTIVE ACTION AND
DISMISSING PLAINTIFFS**

TO:    Plaintiff Christian Parler, through his attorneys, Donald H. Nichols, Paul J.
Lukas, and Michele R. Fisher, Nichols, Kaster & Anderson, PLLP, 4600 IDS
Center, 80 South Eighth Street, Minneapolis, MN 55402

      PLEASE TAKE NOTICE that on September 6, 2007, at 9 a.m., at 180 E. Fifth

Street, 7th Floor, in Courtroom 3, before The Honorable Patrick J. Schiltz, Defendant

KFC Corporation will move the Court for an Order granting its Motion For An Order

Denying Certification of a Class or Collective Action and Dismissing Plaintiffs.

Dated:  July 20, 2007

DORSEY & WHITNEY LLP


By:    s/ Robert R. Reinhart
Robert R. Reinhart, #0090566
Gabrielle D. Mead, #341575
50 South Sixth Street, Ste. 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

Of Counsel:
Robert P. Davis
Diana L. Hoover
MAYER, BROWN, ROWE & MAW LLP          Attorneys for Defendant KFC Corporation
1909 K Street N.W.
Washington, D.C.  20006
Telephone:  (202) 263-3000



EXHIBIT

tabbies

"P"

# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

CHRISTIAN PARLER Carmen
Brooks, Arturo Neyra, Linda
Rodriguez, David Thames, Thomas
Wellman, and Troy Williams,
individually and on behalf of others
similarly situated,

     Plaintiffs,

vs.

KFC Corporation,

    Defendant.

Court File No. 05-2198 PJS/JJG

**DEFENDANT'S AMENDED NOTICE
OF MOTION FOR AN ORDER
DECLARING THAT PLAINTIFFS
HAVE WAIVED THEIR RIGHT TO
ARBITRATE AND ENJOINING
PLAINTIFFS FROM PURSUING
ARBITRATION**

TO: Plaintiff Christian Parler, through his attorneys, Donald H. Nichols, Paul J.
Lukas, and Michele R. Fisher, Nichols, Kaster & Anderson, PLLP, 4600 IDS
Center, 80 South Eighth Street, Minneapolis, MN 55402

PLEASE TAKE NOTICE that on Thursday, September 6, 2007, at 9 a.m., at 180

E. Fifth Street, 7th Floor, in Courtroom 3, before The Honorable Patrick J. Schiltz,

Defendant KFC Corporation will move the Court for an Order granting its Motion For An

Order Declaring That Plaintiffs Have Waived Their Right To Arbitrate And Enjoining

Plaintiffs From Pursuing Arbitration.

Dated:  June 29, 2007

DORSEY & WHITNEY LLP

s/ Gabrielle D. Mead

By:  Robert R. Reinhart #0090566
Gabrielle D. Mead #0341575
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600

Robert P. Davis (*admitted pro hac vice*)
Robert C. Varnell (*admitted pro hac vice*)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street N.W.
Washington, D.C.  20006
Telephone:  (202) 263-3000

*Attorneys for Defendant KFC Corporation*

**EXHIBIT**

tabbies

**"G-1"**

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In Re:

KFC ASSISTANT UNIT MANAGER FAIR
LABOR STANDARDS ACT LITIGATION

MDL Docket No. _____

### MOTION OF DEFENDANT KFC CORPORATION FOR TRANSFER OF ACTIONS TO THE DISTRICT OF MINNESOTA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED PRETRIAL PROCEEDINGS

1.    Defendant KFC Corporation ("KFC") in the twenty-eight cases listed in the attached Schedule of Actions respectfully moves this Panel, pursuant to 28 U.S.C. § 1407, for an Order (i) transferring the twenty-six cases pending in districts other than the District of Minnesota for coordinated pretrial proceedings with the two cases already pending in that district, *Parler et al. v. KFC Corp.*, No. 05-cv-02198-PJS-JJG (D. Minn.) and *Ackerman et al. v. KFC Corp.*, No. 07-cv-02656-PJS-JJG (D. Minn.) and (ii) assigning the transferred cases to Judge Schiltz, who is already presiding over *Parler* and *Ackerman*.

2.    Each of the twenty-eight actions grows out of the decertification of the *Parler* case, a conditionally certified nationwide collective action under the FLSA that remains pending in the District of Minnesota as an individual action.

3.    Each of the twenty-eight complaints contains substantively identical allegations that KFC violated the Fair Labor Standards Act ("FLSA") and, in some cases, parallel state laws by classifying Plaintiffs, current and former KFC Assistant Unit Managers ("AUMs"), as exempt employees. Indeed, the complaints are essentially carbon copies of one another, the only differences relating to whether they allege FLSA claims only or also include substantively identical state-law claims and whether Plaintiffs seek to represent a class under Fed. R. Civ. P. 23 or only seek to proceed "collectively," or, in a handful of cases, individually.

4.    Plaintiffs in each of the twenty-eight actions are represented by the same Minneapolis, Minnesota-based law firm.

5.    In twenty-four cases, Plaintiffs seek to proceed "collectively" or on behalf of a class pursuant to Fed. R. Civ. P. 23. These cases all raise the same question whether Plaintiffs are judicially estopped from proceeding in that manner based on representations that they made to the court in *Parler*.

6.    KFC has moved for an order denying certification of a class or collective action on judicial estoppel grounds in the *Ackerman* case and intends to do so in all other cases in which Plaintiffs seek to proceed "collectively" or on behalf of a class. A hearing on the motion in *Ackerman* is scheduled for September 6 before Judge Schiltz.

7.    The *Parler* case has now been pending in the District of Minnesota for almost two years. Judge Schiltz and Magistrate Judge Graham have become thoroughly familiar with the facts of and issues involved in these cases—including the facts and representations underlying the judicial estoppel issue discussed in paragraphs 5 and 6, *supra*.

8.    Following decertification of the *Parler* action, 324 Plaintiffs filed demands for arbitration with the American Arbitration Association. KFC's motion to enjoin those arbitrations

- 2 -

on the ground that Plaintiffs have waived the right to arbitrate is pending before the Court in *Parler* and is also scheduled for a hearing on September 6 before Judge Schiltz.

9.    Based on the foregoing and for the reasons stated in more detail KFC's supporting memorandum submitted herewith, the twenty-eight cases listed in the attached Schedule of Actions, when considered as a whole, involve common questions of fact and transfer would be convenient for the parties and witnesses and promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a).  Therefore, KFC's Motion should be granted, and the cases should be centralized in the District of Minnesota and assigned to Judge Schiltz for coordinated pretrial proceedings.

Dated: August 21, 2007             By:    _____
                                          Robert P. Davis
                                          Robert C. Varnell
                                          Tamara S. Killion
                                          Jack L. Wilson
                                          MAYER, BROWN, ROWE & MAW LLP
                                          1909 K Street N.W.
                                          Washington, D.C.  20006
                                          Telephone:  (202) 263-3000

                                          *Attorneys for Defendant KFC Corporation*

- 3 -

**Before the Judicial Panel on Multidistrict Litigation**

MDL-___: In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

**SCHEDULE OF ACTIONS**

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>Victoria Poole, Everleon Bates, Cornell Lewis, Fabrion Fleming, Sharon Henry, Cheryl Miles, Yolanda Napier, Sharon Watkins, and Kareem Watson, collectively<br><br>**Defendant:**<br>KFC Corporation | M.D. Alabama, Northern Division | 2:07-cv-00502-MHT-SRW | Myron H. Thompson |
| **Plaintiffs:**<br>Linda Alberico Pellard; Kyra Beal; Gary Bogle; Terry Brabander; Michael Carrizosa; Gina Conwell; Robert Cowand; Sindia Gomez; Javier Gonzalez; Christina Granger; Victoria Grosekemper; Betty Hanlon; Elaina Hassan; Ruth Jacoby; Michael Judd; Lance Lieber; Tyler Logan; Estella Miller; Charles Murdock; Angela Pascoal; Alicia Placencia; Maria Ramirez; Robert Saltzman; Brant Schroeder; Shane Shambo; Melissa Short; Scott Staples; Jose Silva; Ignacio Torres; Jorge Urbina; Lee Vincent; Brent Wagner; Jeanette Weber; William West; and Zane Verley collectively<br><br>**Defendant:**<br>KFC Corporation | D. Arizona, Phoenix Division | CIV-07-1110-PHX-DGC | David G. Campbell |

MDL ____ : In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>Armando Amador<br><br>**Defendant:**<br>KFC Corporation | D. Connecticut,<br>New Haven<br>Division | 3:07-cv-00883-PCD | Peter C. Dorsey |
| **Plaintiffs:**<br>James Prestigiacomo, Jacqueline Chilcote, Latonya Hines, and Colleen McNeal<br><br>**Defendant:**<br>KFC Corporation | D. Delaware | 1:07-cv-00353-*** | Vacant |
| **Plaintiffs:**<br>Gloria Bell, Margaret Elbert, Suzette Hampton, collectively<br><br>**Defendant:**<br>KFC Corporation | D. District of<br>Columbia | 1:07-cv-01016-RJL | Richard J. Leon |

- 2 -

MDL-___: In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>Mark Bourlotos, Eric Alexander, Haddi Azadi, Honorine Baptiste, David Barth, Birkyn Bautista, Marcy Beamenderfer (Thurston), Elias Benedith, Julie Blasini, Victoria Bonilla, Patricia Boudreaux, Demesha Broom, Katie Brown, Brian Bruk, Tammy Canning, Julia Cardenas, Alita Clerisier, Bettina Cobb, Deborah Collins, Brenda Cox, Stephanie Dalton, Travis Denson, David Dollar, Ketty Doralus, Reginald Edwards, Carrie Ewing, Delphia Felder, Paula Finstad, Rosebend Frederic, Diane Guzman, Donnajean Hansen, Joyce Harden, Paul Harris, Sheila Haynes, Vivian Hernandez, Tina Hicks, William Hogan, Jacquelyn Holmes, Evelyn James, Latanya Jason, Dawn Kapwata (Glover), Barbara Kendrick, Michelle Letourneau, Takira Mainor, Anthony Marhsall, Ruben Martinez, Jon McClellon, Jajuan McDuffie, Darrell McSweeney, Anthony Medina, Michael Mitchell, Sylvia Negron, Jill Onest (Benton), Jacqueline Ortiz, Donovan Peffers, Glenn Plofsky, Renee Poisson, Joseph Reynolds III, Perla Rivera, Elliott Samuiles, Gerald Sanders, Jacquelin Scherer, Joshua Scofield, Randy Singleton, Tammy Steed, Steven Stoltz, Schenita Swift, Rajia Talil, Michele Taranto, Annie Williams, Dan Worley, and Michael Yates collectively<br><br>**Defendant:**<br>KFC Corporation | M.D. Florida, Tampa Division | 8:07-cv-00968-JSM-MAP | James S. Moody, Jr. |

MDL ___ : In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>Constance Wilson, Sulpice Aguey-Zinsou, Aziz Alibhai, Peter Augustin, Beternia Baker, Roderick Barton, Tanya Bowden, Rochelle Brister, Sandra Cable, Donna Chapman, Annie Crowell, Alice Daugherty, Tracy Deaton, Arturo Estrada, Williams Evans, Sabrina Fortson, Linda Graves, Erica Greenwood, Audrey Hardison, Michael Harvey, Sherea Heyward, Gyrone Hilliard, Michelle Horton, James Hunter, Tiffany Hutchison, Sherilyn Jackson, Melvin Johnson, Ricky Kitts, Barbara Lancelin, Greta Louissaint, Innocent Mafu, Harold McCoy, Edna McGill, Roxanne Morris, Roxie Morris, Derek Needham, June Nicholson, Bose Omaivboje, Peter Omaivboje, Rasheeda Parks, Bobby Pilcher, Jeffery Rainey Jr., Clarence Richardson, Kimberly Roberts, Kristi Rosenkrans, Nadiene Santos, Olga Segal, Brandon Sheppard, Charlotte Smith, Kendra Taylor, Collin Walters, Chameka Washington, Yolanda Whaley, Kelly White, Lenora Williams, and Verna Workman collectively<br><br>**Defendant:**<br>KFC Corporation | N.D. Georgia, Atlanta Division | 1:07-cv-01538-ODE | Orinda D. Evans |

- 4 -

MDL___: In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>Talia Pippion, Carmen Brooks, And, Kristin Betancourt, on behalf of themselves and all other persons similarly situated, and, Roberto Antunez, Santos Brown, Rita Brown, Sarah Brown, Adrienne Bush, Maria Calderon, Leslie Chavez, Terrence Daniels, Rose Danley, Eleanor Eddy, Tabitha Follman, Yvette Garner, Shannon Gipson, Manuel Guerra, Frances Henry, Maria Hernandez, Edwin Hernandez, Cassandra Holmes, Susan Iwema, Ramiro Jimenez, Carmela Johnson, Krystal Kimble, Merna Lewis, Keri Megary, Celestia Mooney, Antoinette Mukes, Syreeta Nunnally, Adam Overman, Janice Posey, Martha Rivas, Leslie Rogers, Danny Ruiz, Adam Scott, Niema Shepherd, Denise Smith, Louise Smith, Peter Speredakos, Jacqueline Stampas, Jonathan Williams, Bernard Winston, Renata Worrell, and Diana Wright, individually<br><br>**Defendant:**<br>KFC Corporation | N.D. Illinois, Eastern Division | 1:07-cv-03957 | Rebecca R. Pallmeyer |
| **Plaintiffs:**<br>Vickie Aldridge, Jason Dietz, James Doll, Linda Hart, Shehanna Harrison, Daniel Ivy, James Lomax, Angela Ping, Troy Roberts, Rusty Rose, Mary Schmidt, John Wasson, and Nanette Whitmire collectively<br><br>**Defendant:**<br>KFC Corporation | S.D. Indiana, New Albany Division | 4:07-cv-00077-SEB-WGH | Sarah Evans Barker |

MDL ___: In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>Karen Black, on behalf of herself and other similarly situated persons, and William Connelly, Reginald Freeney, Christopher Groves, Erick Hasslebrinck, Deanna Lang, Kristin Lang, Brandy Lee, Radell Lewis II, Judy McCarthy, Joshua Parris, Teresa Robinson, William Rondo Sr., and Michele Stumph, collectively<br><br>**Defendant:**<br>KFC Corporation | W.D. Kentucky, Louisville Division | 3:07-cv-00312-JGH | John G. Heyburn II |
| **Plaintiffs:**<br>Tanya Ford, Anthony Dixon, Ella Jenkins, David Rothenberg Jr., Crystal Smith, and Rashan Smith, collectively<br><br>**Defendant:**<br>KFC Corporation | M.D. Louisiana | 3:07-cv-00390-RET-DLD | Ralph E. Tyson |

- 6 -

MDL-___: In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>Gloria Dozier, Marcus Allen, Derek Anderson, Ousman Bah, Erica Broxton, Leon Burns, Octavia Bynum, Kizzy Cribbs, Christopher Curry, Rony Francois, Drusilla Fuller, Claudia Galindo, Portia Hamilton, Mohamed Hamon, Judy Hose, Carlos Jimenez, Maleisa Johnson, Stephanie Johnson, Michael Joseph, Kevin Kramer, Gregory Kyler, Dana Lane, Jacquelyn McCaffity, Sherry McJunkin, Kevin O'Rourke, Afolake Ogunduyile, Eric Olson, Hasson Oseni, Kyle Peterson, Troy Shenton, Renee Smith, August Simrek, Jody Stolipher, Raheim Taylor, Tammy Thompson, Dalona Tribble, Tanya Tyson, Consuelo Wade, Tanya Wilkerson, and Glenroy Young, collectively<br><br>**Defendant:**<br>KFC Corporation | D. Maryland, Southern Division | 8:07-cv-01517-DKC | Deborah K. Chasanow |
| **Plaintiffs:**<br>Fransiceso Anacleto, Rafael Araujo, Cleonice Brito, Susan Burbul, Dannette Canuto, Karen Chan, Dwight Goodwin, Alessandra Oliveria, Patrick Owens, Derek Sampson, Ana Sandoval, Marcio Takimoto, and Lataisha Wise, collectively<br><br>**Defendant:**<br>KFC Corporation | D. Massachusetts, Eastern Division | 1:07-cv-11066-GAO | George A. O'Toole, Jr. |

- 7 -

MDL ____ : In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>Minnie Ballard, Robert Ailles, Napoleon Brown, Cataura Davidson, Nick Graham, Monica Harris, Kimberly Hayes, Alonzo Horton, Kimberly Mallory, Teri McClain, Willie Milliner Jr., Michelle Saunders, Gloria Thomas, Charles Trimble, Carolyn Walls, Deanna Williams, Michael Williams, Raymond Wilson, and John Young collectively<br><br>**Defendant:**<br>KFC Corporation | E.D. Michigan, Southern Division | 2:07-cv-12538-NGE-VMM | Nancy G. Edmunds |

- 8 -

MDL ____ : In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>Ray Ackerman, Paul Arendt, Cliff Baker, Anthony Borgstahl, Melanie Bruckner, Robert Cisneros, Kimberly Graham, Lavern Grayer, Tim Gullickson, Angela Kaiser, Harry Mattier, Donald Miller, Gulirana Minihas, Natasha Norby, William Nwaneme, Sheila Schaeppi, Keith Schuckert, Stacy Studler, Alfonso Vasquez, Lenora Wardell, and Veronica Wright on behalf of themselves and others similarly situated<br><br>**Defendant:**<br>KFC Corporation | D. Minnesota, St. Paul Division | 07-cv-02656-PJS-JJG | Patrick J. Schiltz |
| **Plaintiffs:**<br>Christian Parler[1]<br><br>**Defendant:**<br>KFC Corporation | D. Minnesota, St. Paul Division | 05-cv-02198-PJS-JJG | Patrick J. Schiltz |
| **Plaintiff:**<br>Jason Johnson<br><br>**Defendant:**<br>KFC Corporation | W.D. Missouri, Western Division | 4:07-cv-00416-JTM | Magistrate Judge John T. Maughmer |

[1]    In addition to Christian Parler, 324 Plaintiffs in Parler filed demands for arbitration with the American Arbitration Association. A motion is currently pending in Parler to enjoin these Plaintiffs from arbitrating on the ground that they waived their right to arbitrate by opting into and participating in the Parler litigation. These individuals are listed at the end of this Schedule of Actions.

- 9 -

MDL ____: In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>Arturo Neyra, on behalf of himself and classes of those similarly situated, and Rebekah Andre, Angelina Bagshaw, James Bailey, Matthew Bozek, Catherine Brandon, Sheila Bremmer, Joaquin Buyco III, Christine Colin, Kyle Cunningham, Denny Cyganek, Amber Doyle, Effren Esquivel, Williams Evans, Lisa Fisher, Paula Heren, Victor Herrerias, Jeremiah Ingrassia, Julia Jerman, Tariq Khan, Greg Klassoff, Sandy Lafontaine, Teresa Macias, Mark Martin, Amanda Maurer, Krystle McClatchey, Donald Parker, Felipe Payumo, Dawn Raymond, Margo Robinson, Brandon Robinson, Tracy Terranvoa, Loretha Thompson, Lizette Valdovinos, and Jennifer Worthington collectively<br><br>**Defendant:**<br>KFC Corporation | D. Nevada, Southern Division | 2:07-cv-795-RCI-RJJ | Robert C. Jones |
| **Plaintiffs:**<br>Robert Gruber, Amado Deleon, Maria Frias, Flor Hernandez, Betty Lebon, Joshua Murphy, Carlos Pena, Sheik Rahman, Linda Rodriguez, Larry Rogers, Nikisha Sellers, and Jacqueline Williams, collectively<br><br>**Defendant:**<br>KFC Corporation | D. New Jersey, Camden Vicinage | 1:07-cv-02775-JHR-JS | Joseph H. Rodriguez |

- 10 -

MDL ___ : In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>David Thames on behalf of himself and classes of those similarly situated, and Fabiola Adonis, Akash Ahmed, Augstin Alvarez, James Anderson, Kenneth Bird, Saleha Biswas, Annabelle Boose, Chris Bradshaw, Santrese Brower-Haynes, Paul Brown, Jeffrey Coleman, Tammie Cromartie, Noel Reyes Contreras, Antionette Davis, Patricia Deline, Jasmin Diaz, Hakan Duzel, Alfonso Esquivel, Vilma Flamenco, Taga Fahim, Salvatore Grande, Akes Handy, Kim Harley, Roger Hillaire, Luke Hopkins, Suzette Johnson, David Latimer, Doris Laya Calle, Lisa Muse, Roudy Noel, Nathan Ouderkirk, Denise Polkrentowski, Iris Rivera, Awilda Rosario, Joeann Starling, Judith Sutherland, Sheron Thomas, Leon Tucker, Marcus Vaughn, and Denise Williams collectively,<br><br>**Defendant:**<br>KFC Corporation | S.D. New York, Foley Square | 1:07-cv-6836-WHP | William H. Pauley, III |
| **Plaintiffs:**<br>Nikia Barkley, on behalf of herself and other similarly situated persons, and Steven Byrd, Katrina Dennis, Teena Hardison, Cheryl Johnson, Naterra McQueen, Tonya Mills, Marasha Patterson, Stephanie Reed, and Luis Romero collectively<br><br>**Defendant:**<br>KFC Corporation | W.D. North Carolina, Charlotte Division | 3:07-cv-002266-FDW-CH | Frank D. Whitney |

MDL-____: In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>Thomas Wellman, on behalf of himself and other similarly situated persons, Angelia Al-Shalabi (Tucker), Dave Bonnell, Eduard Estibal, Roxanne Harnan, Georgianna Hayes, Michael Lykins, Paula Powell, Alejandro Sanchez, Joy Schirzinger, James Smith, Carl Thomas, Amitra Wiggins, and Thomas Woods, collectively<br><br>**Defendant:**<br>KFC Corporation | S.D. Ohio, Southern Division | 1:07-cv-00439-SSB-TSH | Sandra S. Beckwith |
| **Plaintiffs:**<br>Grahn Baccus, Alora Bethany, Regina Daniel, Betsy Eakins, Ali Ghayoor, William Gray, Larry Griffith, Kevin Hardin, Katrina Hitsman, Wayne Holliday, Wallace Ingraham, Carolyn Kennedy, Sandra Martin, Renée Morgan, Nichole Owens, Tamela Rowe, Barbara Shubert and Donna Stanley collectively<br><br>**Defendant:**<br>KFC Corporation | W.D. Oklahoma | 5:07-cv-648-D | Timothy D. DeGiusti |

- 12 -

MDL____: In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>Troy Williams on behalf of himself and those similarly situated, and Denice Moore, Richard Adams, Anthony Carroll, Deborah Dawson, Stacey Ellis, Renee Fortner, Dominic Hamilton, Tracey Harris, Tamica Hicks, Tyrone Holland, Estella Houston, Reginald Jones, Philip McPoyle, Jameel Mohammad, Pauline Speight, Lenora Tucker, Millicent Furgess, Stanley Williams, and Sandra Wilson collectively<br><br>**Defendant:**<br>KFC Corporation | E.D. Pennsylvania, Philadelphia Division | 2:07-cv-02920-CMR | Cynthia M. Rufe |
| **Plaintiff:**<br>Kimberlee Bosworth<br><br>**Defendant:**<br>KFC Corporation | E.D. Tennessee, Chattanooga Division | 1:07-cv-00131 | Curtis L. Collier |

- 13 -

MDL ____ : In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>Claudio Hernandez, Chris Aguilar, Maria Alvizu, Xavier Anderson, Yulonda Brown, Nicole Calhoun, Beverly Carter (Mitchell), Jami Cheshire (Thomason), Kara Crisswell, Leeben Cruz, Leeandra Daniels, Tiffany Davis, Mario Dovalina, Connie Eakins Samples, Angela French-Garcia, Rosalia Gonzalez, Tina Hurdle, Arshad Janjua, Salim Jessa, Mary McElroy, Flor Mendoza, Michael Reid, Jimmy Rollins, Suzanne Taylor, Charlene Thurston, Francisco Trevino, Gerardo Ventura, and Amed Zetch, collectively<br><br>**Defendant:**<br>KFC Corporation | W.D. Texas, El Paso Division | 3:07-cv-201-DB | David Briones |

MDL-____: In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:** Sebrina Dandrige, Cary Amodei, Julena Atwood, Cleo Ballard, Michael Botset, Phillip Branch, Romeo Camacho, Angela Cannon, Steve Carrick, Arlene Cortez, Carlos Cruz, Sadie Edlow, Calvin Fisher, Erron Francis, Jennifer Garcia-Gutierrez, Terri Green, Mohammed Haque, Derrick Hawkins, Audrey Holmes, Danielle Hoe McClellan, Dawn Humphries, Abdelhafiz Ibrahim, Richard Jarman, Lawrence Kenyon, Christian Madrid, Colleen Martin, Tina Mason, George Mastorakis, Asia Miranda, Moussaif Mohammed, Loveday Okocha, Kimberly Overby, Mary Parker, Joni Payne, Angel Phillips, James Robb, Scott Rudnick, Roseylin Samayah, Scott Schaller, Marquatta Shaffner, Henry Smith, Stanley Stojakovich, Keith Truesdale, Lowell Washington, Johnathan Wilkerson, and Odina Wright, collectively **Defendant:** KFC Corporation; KFC U.S. Properties, Inc. | E.D. Virginia, Richmond Division | 3:07-cv-00332-JRS | James R. Spencer |
| **Plaintiffs:** Hope Jones and Robin Mummert, collectively **Defendant:** KFC Corporation | N.D. West Virginia, Martinsburg Division | 3:07-cv-00074-JPB | John P. Bailey |

- 15 -

MDL—___: In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

**Additional Plaintiffs from *Parler et al. v. KFC Corp.*, No. 05-cv-02198-PJS-JJG (D. Minn.):**

Joseph Abbey, Daniel Adams, Chavis Adams, Gregory Aden, Saima Ahmed, Peggy Alzate, Nadia Amado, Hilario Amador, Jesse Amos, Lee Amos, Laurie Anderson, Vicki Anderson, Jack Anderson, Lee Bacy II, Brenda Bailey, Christian Banchs, Ivett Banuelos, Jamey Barnes, Andrea Barrow, Charles Bass, Sonya Baxter, Jean Belizaire, Laurance Bell, Christine Bennett, Rodolfo Bermudez, Adrianne Bibbs, John Boone, Joyce Bowers, Carolyn Bradley, Deborah Brieger, Tawanda Brihm, Onessa Brooks, Beverly Brown, Thesha Brown, Gladys Brown, Tangela Brown, Shirley Burks, Michael Burson, Shaquana Burton, Frederick Burton, Laressia Burton, Delis Camacho, Karen Caraballo, Charlotte Carpenter, Margo Carrick, Albert Carter, Jonnie Castaneda, Jose Castillo, Odalys Castro, Constance Chambers, Timothy Champlin, Kevin Chang, Limberoy Chatas, Scott Christopher, Brian Clark, Haikeem Coleman, Clark Colepaugh, Jeanine Collins, Beverly Collins, Randy Combs, David Connelly, Stephen Corr, Kim Costandine, Edward Couturier Jr., John Covington, Robert Coward, Wilfred Cruz, Steven Csete, Chiquita Curry, Bernetta Daphness, Sanguia Darden, Anil Das, Lucinda Davis, Edward Dean, Linda Deese, Afton Del Rio, Gloria Dennis, Jason Dewitt, Sharon Diggs, David Drain, Lakeysha Drawhorn, Thomas Eckroth, Oscar Edgar, Eugenia Edington, Sunil Edwards, Sheila Edwards, Antwan Ellis, Shannon Emmons, Scott Enoch, Julda Escobar, Dylan Faust, Sylvia Fields, Wilfredo Figueras, Cathleen Fitzgerald, Vada Flournoy, Michael Floyd, Charles Forbes, Jonathan Fowlkes, Robert Franklin, Spencer Frazier, Natia Funderburk, Marc Galan, Enrique Garay, Cheryl Garcia, Larry Garcia, Patricia Gibbs, Denise Glover, Angel Gomez, Alan Gray, Christina Gray, Celia Green, Kenya Green, Beatrice Green, Janai Gromoll, Michael Gross, Erma Hall, Abdul Hameed, John Hannigan, Tracey Harley, Vicki Harper, Teresa Harvey, Roberto Hernandez, Amanda Hernandez, Isidoro Hernandez, Juan Herrera, Mike Hill, Jerry Hodges, Kenneth Holley, Shanedris Holston, Timothy House, Kevin Howard, Sheila Howard, Benita Howard, Portia Huckleberry, Joseph Huggins, Sheena Hutchinson, David Hylton, Stephen Ike, Elizabeth Ipina, Sylvia Ipina, Morshed Jabbar, Priscilla Jackson, Eva Jaramillo, Virginia Jefferson, Priscilla Jiggetts, Arnoldo Jimenez, Michael Jimenez, Tamaria Johnson, Rickie Johnson, Jewell Johnson, Diana Johnson, Tim Jones, Trecia Jones, Lisa Jones, Ravilla Jones, Sukhjeet Kaur, John Keicher, Michael Kelly, Karen Kemper, Lether Kerney, Carol Keys, Atif Khan, Jannette King, Alluston Knowlden, Danette Koithahn, Andrew Krohn, Melissa Lamay, Shawn Lanman, Christian Lara, Betty Leake, Kerriann Lewis, Kenny Lindsey, Jose Lopez, Silvia Lopez, Pamela Lowry, Alvin Lundy, Jeannette Lundy, James Lutz, Curtis Lyons, Debi Mack, Saira Magana, Sheila Mahoney, Lisa Marren, Eduardo Martinez, Diahann Maylor, Carl Maynard, Louether McCoy, Ronald McKnight, Kenneth McMillian, Michelle McNeal, Waleska Mendez, Jorge Mendoza, Masum Mieh, Nadia Miller, Jami Miller, Broderick Miller, Wayne Miller, Melanie Mirzaie, Jose Monroig, Everton Morris, Beverly Moser, Alexander Mota, Shawmarie Mulkern, Cecile Murray, Cherise Mustin, Rommel Nannos, Shelley Nash (Raffety), Carmelo Negron, Andrew Nelson, Geraldine Newsom, John Noble, Lisa Nzekwe, Sharon Oakley, Brian O'Brien, George Ofori, Kelvis Okungbowa, Gbenga Olagbaju, Bose Omaivboje, Ody Onwuma, Demetrius Palmer, Diamond Papadopoulos, Darleen Patillo, Paulette Patterson (Walker), Bonnie Paul, Jerome Payton, Francis Peterson, Yoseffa Pierce, Nathan Piercy, Frances Pitt, Marineth Porteria, Cindy Potter, Mike Priester, Jane Pritsch, Annease Pruiett, Sara Ramos, Margaret Reaser, Tiffany Reed, Angel Rhodes, Kashif Riaz, Rosario Rice, Richard Rice,

MDL-_____: In re KFC Assistant Unit Manager Fair Labor Standards Act Litigation

Natalee Richards, Linda Richardson, Angela Richardson, Herbert Riedel, Ralph Rivera, Nancy Rivera, Thomas Roberson, Peggy Roberts Jones, Johani Robertson, Betty Robinson, Anthony Robinson, Melvin Rocha, Bettie Rock, Lizbeth Rodriguez, Jacob Rogers, Daniel Rosa, Ewan Rose, Jackie Ross, Brandy Ruth, Brenda Salazar, Carmen Salazar Jr, Milton Sayers, Carmine Scocco, Bernard Sheehan, Desiree Sherwood, Rochelle Shields, Ileana Siguenza, Robin Simmons, Dionne Skillings, Sylvia Slenczka, Arlene Fenner (Smith), Lorri Smith, Rodney Smith, Christina Smith, Beatrice Sparks, William Spindle Jr, Jeanne Strong, Flemint Sutton, Deanna Swader, Mary Talbot, Charmion Tamar, Norma Tanner, Latisha Tarver, Erin Tatum, Bruce Taylor, Corine Terry, Linda Thomas, Jackie Thomas, Alvaro Torres, Joel Tovar, Gloria Turner, Albert Udofia, Andrew Uecker, Heather Urbanek-Hamm, Michael Valadez, Rose Vincent, Guillermo Viscarra, Pamela Wade, Patti Waldby, Phenicia Walker, Chris Wall, Jill Washington, Jocelyn Washington, Neil Webb, Marcus West, Jacob Westholter, James Whalen, Daryl Whipple, Herbert White, Doris Wiggins, Ethel Williams, Olivia Williams, Tabitha Williamson, Lisa Wilson, Darlene Wilson, Dana Wimmer, Allyson Winters, Latoya Wright, Danette Yard, Lee Young, Kenneth Young, Dean Zielinski

- 17 -

EXHIBIT

tabbles

"G—2"

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In Re:

KFC ASSISTANT UNIT MANAGER FAIR
LABOR STANDARDS ACT LITIGATION

MDL Docket No. _____

**BRIEF IN SUPPORT OF MOTION OF DEFENDANT KFC CORPORATION FOR
TRANSFER OF ACTIONS TO THE DISTRICT OF MINNESOTA PURSUANT
TO 28 U.S.C. § 1407 FOR COORDINATED PRETRIAL PROCEEDINGS**

**INTRODUCTION**

Pursuant to 28 U.S.C. § 1407, Defendant KFC Corporation ("KFC") requests an Order transferring the twenty-six cases in the attached Schedule of Actions pending in districts other than the District of Minnesota to the District of Minnesota for coordinated pretrial proceedings with the two similar cases already pending in that court. These twenty-eight actions (the "KFC FLSA Cases") all grow out of the decertification of a conditionally certified, nationwide collective action in the District of Minnesota, *Parler et al. v. KFC Corp.*, No. 05-cv-02198-PJS-JJG (D. Minn.), and all allege that KFC improperly classified its Assistant Unit Managers ("AUMs") as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and various state wage and hour laws. The *Parler* case, now scheduled to proceed as an individual action, and *Ackerman et al. v. KFC Corp.*, No. 07-cv-02656-PJS-JJG (D. Minn.), a recently-filed putative collective and class action under the FLSA and the Minnesota wage and hour laws, are currently pending in the District of Minnesota before Judge Schiltz.

Although, as Plaintiffs conceded in *Parler*, the KFC FLSA Cases do *not* present "common questions of fact" in the sense that any particular plaintiff may proceed collectively or on behalf of a class or join his or her claims with those of any other plaintiff, the cases do as a whole involve common questions of fact—and will inevitably involve overlapping discovery and common discovery and case management issues—in that they involve substantively identical allegations, and, in twenty-four of the twenty-eight cases, Plaintiffs seek to proceed "collectively," *see* 29 U.S.C. § 216(b), and/or on behalf of a class under Federal Rule of Civil Procedure 23. In addition, the twenty-four cases involving multiple plaintiffs also raise the common question whether Plaintiffs are judicially estopped from proceeding collectively or on behalf of a class or joining their claims based on the same underlying facts—*i.e.*, certain representations that they made to the court in *Parler*. Therefore, as explained in more detail *infra*, a transfer to the Dis-

trict of Minnesota for coordinated proceedings would be convenient for the parties, promote the

just and efficient conduct of the actions, and conserve judicial resources in the twenty-six other

affected district courts across the country. Further, the cases should be transferred to Judge

Schiltz in the District of Minnesota because, among other factors discussed *infra*, he has become

familiar with the issues involved during the fifteen months he has presided over the *Parler* ac-

tion, and Minnesota's geographically central, easily accessible location makes it an ideal forum

for centralization of these cases, which are now dispersed nationwide.

## FACTUAL BACKGROUND

### A.    The *Parler* Case

In September 2005, Christian Parler filed suit in the District of Minnesota against KFC,

claiming that he and other, allegedly similarly situated AUMs were entitled to overtime compen-

sation under the FLSA. *Parler*, Dkt. No. 1. The parties subsequently stipulated to conditionally

certify the case as a nationwide collective action for distribution of notice and discovery,[1] *see*

*Parler*, Dkt. No. 51, and 993 individuals eventually filed written consents to join the action. In

June 2006, Plaintiffs moved to amend the complaint to bring class action claims under the wage

and hour laws of eight different states; that motion was granted as to seven of the eight states.

*Parler*, Dkt. Nos. 96, 97, 118.

In October 2006, *Plaintiffs* moved to decertify the conditionally certified collective action

on the ground that their "job duties vary from 'restaurant to restaurant.'" *Parler*, Dkt. No. 137 at

2. Plaintiffs also requested that the claims of the non-Minnesota opt-in plaintiffs be transferred

---

[1]    At the notice stage of FLSA cases, courts apply a "fairly lenient standard" that "typically results" in conditional certification and notice to potential class members based on even a "modest factual showing" of similarity. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (internal quotation marks omitted).

to twenty-eight new courts nationwide, with all of the Minnesota opt-ins remaining in the *Parler* case in the District of Minnesota. *Id.* at 1. KFC responded by agreeing with Plaintiffs that de-certification was appropriate *because of* the "restaurant to restaurant" variations in Plaintiffs' job duties. *Parler*, Dkt. No. 151. However, KFC opposed Plaintiffs' transfer requests for two pri-mary reasons: First, as a matter of black letter law, decertification of an FLSA collective action results in the dismissal of all opt-in plaintiffs without prejudice, not transfer. *Id.* at 1, 7-8. Sec-ond, by representing to the *Parler* court that their "job duties vary from 'restaurant to restau-rant,'" Plaintiffs would be judicially estopped from pursuing the statewide collective or class ac-tions they envisioned. *Id.* at 2, 6-7.

Magistrate Judge Graham recommended that Plaintiffs' motion to decertify the collective action be granted. *Parler*, Dkt. No. 169. Judge Graham's Report and Recommendation stated: "Because their job duties differ on a restaurant-by-restaurant basis, the plaintiffs concede that they are not similarly situated." *Id.* at 2. Judge Graham further stated that Plaintiffs had "not adequately shown a common policy, unique to employees in any particular state, that would jus-tify their reorganization into state-by-state groups"; that it was "probable, moreover, that such groups would not even qualify for *conditional* certification"; and that, in short, "there [was] in-adequate factual support and no legal support for" the transfers that Plaintiffs requested. *Id.* at 3-4, 5 (emphasis added).

Plaintiffs did not object to Judge Graham's recommendation of decertification but did ob-ject to her characterization of their concessions. *Parler*, Dkt. No. 170. Judge Schiltz denied Plaintiffs' request that "the Court ... 'correct' [Judge Graham's opinion] in order to prevent [KFC] from using [it] against plaintiffs in subsequent litigation." *Id.* at 2. Judge Schiltz rea-

soned that "Judge Graham was not ... making any factual finding. Rather, she was characterizing statements made by plaintiffs in their papers," which "speak for themselves." *Id.*

**B.    *Parler* Progeny**

Since Judge Schiltz's Order decertifying the *Parler* action,[2] Plaintiffs have filed twenty-seven new cases around the country, including *Ackerman, supra,* a putative collective and class action under the FLSA and Minnesota wage and hour laws filed in the District of Minnesota. Twenty-five of these new cases were filed in federal court. In Illinois and Pennsylvania, Plaintiffs filed in state court, but KFC properly removed these cases based on federal question jurisdiction and diversity jurisdiction under the Class Action Fairness Act. In twenty-four of these cases, Plaintiffs seek to proceed "collectively" (presumably under the FLSA's collective action provision, 29 U.S.C. § 216(b)) and/or on behalf of a class under Federal Rule of Civil Procedure 23. In twelve cases, Plaintiffs assert parallel state-law claims in addition to their FLSA claims; in seven of these cases, they specifically seek to pursue their state-law claims on behalf of a class pursuant to Rule 23. The *Parler* case also remains pending in the District of Minnesota as an individual action.[3] In addition, 324 of the *Parler* plaintiffs filed demands for arbitration with the American Arbitration Association ("AAA"). KFC has filed a motion in *Parler* to enjoin these arbitrations on the ground that Plaintiffs waived the right to arbitrate by opting into the *Parler* action and pursuing their claims in court for well over a year. *Parler,* Dkt. Nos. 185, 87. A hearing on KFC's motion is scheduled for September 6. *Parler,* Dkt. No. 191.

---

[2]    The Order was entered on June 4 and became effective August 3, *Parler,* Dkt. No. 170, with respect to all plaintiffs other than the 324 plaintiffs who, as discussed just below, have filed demands for arbitration with the American Arbitration Association, *Parler,* Dkt. No. 193. Dismissal of those plaintiffs has been stayed pending further order of the Court. *Id.*

[3]    The Connecticut, Missouri, and Tennessee cases are also styled as individual actions.

In all of these new cases, Plaintiffs are represented by the same Minneapolis, Minnesota law firm that represented them in *Parler*. All of the new cases are also premised on the same allegation made in *Parler*—*i.e.*, that KFC improperly classifies AUMs as exempt from the overtime requirements of the FLSA and various state laws.

## ARGUMENT

**I.    The KFC FLSA Cases Should Be Transferred And Coordinated Under § 1407(a).**

This Panel is authorized to transfer civil actions "involving one or more common questions of fact [that] are pending in different districts" if transfer would be "for the convenience of parties and witnesses" and would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The KFC FLSA Cases satisfy these three statutory requirements and should therefore be transferred for coordinated proceedings.

*First*, the cases involve "common questions of fact" such that transfer is appropriate. In each of the cases, Plaintiffs make substantively identical allegations concerning their job duties and their alleged misclassification as exempt from the overtime requirements of the FLSA and parallel state wage and hour laws. The Panel has consistently held that such exempt status cases are appropriate for centralization for coordinated proceedings. *See, e.g., In re Wells Fargo Loan Processor Overtime Pay Litigation*, --- F. Supp. 2d ----, 2007 WL 1853954, at *1 (J.P.M.L. June 22, 2007); *In re Wachovia Sec., LLC, Wage & Hour Litig.*, 469 F.Supp.2d 1346, 1347 (J.P.M.L. 2006); *In re Dollar Gen. Corp. FLSA Litigation*, 346 F. Supp. 2d 1368, 1369 (J.P.M.L. 2004); *In re Allstate Ins. Co. FLSA Litigation*, 283 F. Supp. 2d 1358, 1359 (J.P.M.L. 2003).

While the KFC FLSA Cases do *not* raise common questions of fact in the sense that any particular plaintiff is entitled to proceed collectively or on behalf of a class,[4] centralization is nonetheless appropriate under Panel precedent because the cases do "involve common factual allegations concerning [KFC's] alleged failure to pay overtime compensation to current and former [AUMs]." *In re Wells Fargo*, --- F. Supp. 2d at ----, 2007 WL 1853954, at *1; *cf. In re NSA Telecommunications Records Litig.*, 444 F. Supp. 2d 1332, 1334-35 (J.P.M.L. 2006) ("Transfer ... does not require a complete identity or even majority of common factual issues as a prerequisite," as the transferee judge can "allow[] discovery with respect to any non-common issues to proceed concurrently with discovery on common issues."). Thus, the KFC FLSA Cases are likely to involve common discovery issues surrounding, by way of example only, KFC's payroll and computer systems; Plaintiffs' job descriptions, training manuals, operations manuals, and employee handbooks; Rule 30(b)(6) depositions; various e-discovery issues; and KFC's determination that AUMs are exempt from the overtime requirements of the FLSA and state law. In cases involving such common factual allegations and common discovery issues, transfer "is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties." *Id.*

The cases also involve common factual issues in the sense that, in each case, the question whether Plaintiffs are judicially estopped from proceeding collectively or on behalf of a class or

---

[4]    As discussed above, Plaintiffs have already conceded that they are dissimilarly situated under the FLSA, 29 U.S.C. § 216(b), because their job duties vary from restaurant to restaurant. "[T]he 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." The § 216(b) requirement is also "considerably less stringent than the Rule 23 requirements." *Perez v. RadioShack Corp.*, 2003 WL 21372467, at *1 (June 13, 2003). Thus, by conceding that, due to restaurant-to-restaurant variations in their job duties, they are not "similarly situated" under the FLSA, Plaintiffs *a fortiori* have also conceded that they cannot pursue a class action or join or consolidate their claims under the Federal Rules of Civil Procedure.

from joining or consolidating their claims turns on the representations they made to the court in *Parler* concerning the restaurant-to-restaurant variations in their job duties. Similarly, in *In re Cintas Overtime Pay Arbitration Litigation*, 444 F. Supp. 2d 1353 (J.P.M.L. 2006), the Panel transferred seventy-one actions in which Cintas sought to compel arbitration because, absent transfer, each district court would have been required to "construe identical contractual arbitration clauses to determine" whether the parties had breached or complied with the arbitration clauses by their participation in a single FLSA collective action pending in the transferee district. *Id.* at 1354-55. Like the judicial estoppel issue in this case, the arbitration issue in the *Cintas* cases was "intertwined" with the original collective action, turned on the effect of various "rulings and stipulations" from that action, and was therefore likely to "involve identical factual and legal arguments" in each of the transferred cases. *Id.* at 1355. Accordingly, the Panel concluded that centralization of the actions was "necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *Id.*; *cf. In re Fourth Class Postage Regulations*, 298 F. Supp. 1326, 1327 (J.P.M.L. 1969). Similarly, in this case, MDL treatment is appropriate because it will allow one judge, rather than two dozen or more, to review and analyze the factual basis for KFC's estoppel argument—*i.e.*, Plaintiffs' representations in the *Parler* case.

*Second*, transfer would promote "the convenience of the parties and the witnesses" in a number of ways. 28 U.S.C. § 1407(a). Transfer for coordinated proceedings would avoid duplicative discovery and result in significant time and cost savings to both Plaintiffs and KFC by allowing them to develop a coordinated approach to discovery and a consistent and manageable case schedule. Indeed, the necessity of centralization has already become apparent, as KFC has already been served with numerous substantively identical, overlapping, and duplicative written

discovery requests. *See generally* FLSA cases cited at *supra* page 5. In addition, to the extent that any of the cases involve common witnesses, it would also protect those witnesses from multiple depositions. A transfer to the District of Minnesota, as KFC proposes, would, of course, be particularly convenient for Plaintiffs, as Plaintiffs' counsel is based in Minneapolis. Moreover, coordinated proceedings should greatly reduce the amount of briefing necessary to decide the judicial estoppel question that the vast majority of these cases raise. *See In re Cintas*, 444 F. Supp. 2d at 1355. Instead of briefing the question as many as twenty-four or more times, the parties should be able to address the issue in one or a few sets of comprehensive briefs. Finally, because "depositions [can] be taken where the witness resides ... regardless of which District is selected as the transferee court," transfer will work no hardship on individual Plaintiffs. *In re Gov't Auto Fleet Sales Antitrust Litig.*, 328 F. Supp. 218, 220 (J.P.M.L. 1971); *see also, e.g., In re IBM Peripheral EDP Devices Antitrust Litig.*, 411 F. Supp. 791, 792 (J.P.M.L. 1976) (transferee judge "is authorized ... to conduct depositions in not only the transferee district but also any other federal judicial district as well").

*Third*, transfer would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Centralization would, for example, "prevent inconsistent [and] repetitive pretrial rulings" and thereby "conserve the resources of the parties, their counsel and the judiciary." *In re Allstate*, 283 F. Supp. 2d at 1359; *accord, e.g., In re Dollar Gen.*, 346 F. Supp. 2d at 1369 ("Centralization ... is ... necessary in order to ... prevent inconsistent rulings on pretrial motions, including those with respect to certification of collective actions" and thereby "conserve the resources of the parties, their counsel and the judiciary."). By centralizing and coordinating the cases, a single judge, rather than as many as twenty-seven, could resolve any recurring discovery disputes that arise and any other pretrial motions. In particular, centralization would enable a

single judge to address the judicial estoppel question that most of these cases raise. In addition to the obvious benefit of judicial economy this would achieve, as the Panel has recognized, "the interests of justice are not ordinarily served by" inconsistent district court rulings on questions of law, and "§ 1407 is an appropriate means of avoiding injury to like parties caused by inconsistent judicial treatment." *In re Fourth Class Postage*, 298 F. Supp. at 1327. Here, all Plaintiffs are equally bound by the representations made to the court in *Parler*. Given that transfer and centralization is otherwise appropriate, there is no reason that those representations should have different consequences for different Plaintiffs. *See id.*

## II.    The KFC FLSA Cases Should Be Transferred To The District Of Minnesota And Assigned to Judge Schiltz

For a number of reasons frequently considered by the Panel, the KFC FLSA Cases should be transferred to the District of Minnesota and assigned to Judge Schiltz. Judge Schiltz has become familiar with the issues involved in the case by presiding over the *Parler* action for fifteen months, as has Magistrate Judge Graham; two related actions are currently pending in the District of Minnesota, whereas only one action is pending in all other districts; the *Parler* action is by far the longest pending action, having been filed almost two years ago; the District of Minnesota is a geographically convenient location for this litigation that is nationwide in scope; and the court is also convenient for counsel, as Plaintiffs' counsel in all twenty-seven cases are based in Minneapolis, and KFC's co-counsel in the *Parler* case for nearly two years (and now in *Ackerman*) are also based in Minneapolis. In light of all of these factors, the District of Minnesota is the obvious choice as a transferee forum.

"Familiarity of a particular judge with the litigation at hand is, of course, a key factor" in selecting a transferee forum. Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 215 (1977). In this case, Judge Schiltz is certainly "familiar with the liti-

- 9 -

gation at hand" given that he has presided over the *Parler* case since May 2006, including Plaintiffs' motion for decertification, and is now also assigned to the *Ackerman* case. *See In re Dollar Gen.*, 346 F. Supp. 2d at 1370 ("the judge [in the transferee district] ... has gained familiarity with the issues involved in the litigation through," *inter alia*, "his certification of an opt-in collective action under the FLSA"). In addition, KFC's motion to enjoin the 324 arbitrations filed by Plaintiffs, *see supra* page 4 & n.2, is now pending before Judge Schiltz in *Parler*, Dkt. Nos. 185, 187, as is KFC's motion to deny certification of a class or collective action on judicial estoppel grounds in *Ackerman*, Dkt. Nos. 9, 14.[5] Moreover, Magistrate Judge Graham is also assigned to both *Parler* and *Ackerman* and is also now well-versed in the facts of these cases. In *Parler*, Judge Graham has issued thorough Reports and Recommendations concerning Plaintiffs' Motion for Leave to Amend the Complaint, Dkt. No. 118, and Plaintiffs' Motion for Decertification and to Add New Plaintiffs, Dkt. No. 169, and has also ruled on various discovery disputes and scheduling issues, *e.g.*, Dkt. Nos. 65, 133, 150. Indeed, Judge Schiltz and Magistrate Judge Graham are particularly familiar with the facts and representations underlying the judicial estoppel issue at the forefront of most of these cases and are uniquely well-positioned to determine whether, for example, Plaintiffs "succeeded in persuading [the] court to accept [their] position" in *Parler*, an important factor in the judicial estoppel analysis. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). When as in this case a particular court is already familiar with the underlying factual issues, that factor weighs heavily in favor of transferring the balance of the multidistrict docket to that court.[6]

---

[5]    KFC presently intends to file similar motions in all other multi-plaintiff cases in which Plaintiffs attempt to proceed collectively or on behalf of a class or join their claims.

[6]    *See, e.g., In re Seroquel Prods. Liab. Litig.*, 447 F. Supp. 2d 1376, 1379 (J.P.M.L. 2006); *In re Ocean Fin. Corp. Prescreening Litig.*, 435 F. Supp. 2d 1350, 1352 (J.P.M.L. 2006); *In re (Continued on next page....)*

In addition, transfer to the District of Minnesota is appropriate because it is the only court with more than one action currently pending and because the *Parler* action has been pending far longer than any other case. Although the difference in the number of pending cases is only two-to-one in this case, even relatively minor differences have been considered by the Panel in the past, particularly when, as in this case, other factors already favor transfer to the forum. *E.g., In re Data Gen. Corp. Litig.*, 470 F. Supp. 855, 859 (J.P.M.L. 1979) (transferee district selected because, *inter alia*, three of six cases were already pending there); *In re Multi-Piece Rim Prods. Liab. Litig.*, 464 F. Supp. 969, 975 (J.P.M.L. 1979) (transferee district selected because, *inter alia*, four actions were already pending there and the remaining fifteen actions were spread across thirteen other districts). Moreover, the *Parler* action has been pending much longer than any other case—almost two years as compared to a little more than two months or less for the other cases—which is a factor that the Panel has consistently considered relevant and important. *See, e.g., In re Ocean Fin.*, 435 F. Supp. 2d at 1352 (transferee district selected because, *inter alia*, "the action [there], which is proceeding apace, has been pending months longer than those filed" in other districts); *In re Dollar Gen.*, 346 F. Supp. 2d at 1370 (transferee district selected because, *inter alia*, "the action [there] has been pending significantly longer and is further advanced procedurally than the actions in the other districts").

---

*Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 398 F. Supp. 2d 1356, 1358 (J.P.M.L. 2005); *In re Pharmastem Therapeutics, Inc., Patent Litig.*, 360 F. Supp. 2d 1362, 1364 (J.P.M.L. 2005); *In re Neurontin Marketing and Sales Practices Litig.*, 342 F. Supp. 2d 1350, 1351-52 (J.P.M.L. 2004); *In re Oil Spill by "Amoco Cadiz" Off the Coast of France on Mar. 16, 1978*, 471 F. Supp. 473, 478 (J.P.M.L. 1979); *In re Capital Underwriters Secs. Litig.*, 464 F. Supp. 955, 960 (J.P.M.L. 1979); *In re CBS Color Tube Patent Litig.*, 329 F. Supp. 540, 542 (J.P.M.L. 1971); 15 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3864 n.33 & accompanying text (3d ed. 2007) (collecting cases).

Transfer to the District of Minnesota is also appropriate because this litigation is nation-wide in scope, with actions pending from Arizona and Nevada to Massachusetts, New York, and Florida and all points in between. The Panel has consistently recognized that when "litigation [is] already nationwide in scope," a "geographically central district" "will be a convenient location" for centralization of the actions. *In re Am. Online, Inc. Version 2.0 Software Litig.*, 162 F. Supp. 2d 690, 691 (J.P.M.L. 2001); *accord, e.g., In re A.H. Robins Co., Inc. 'Dalkon Shield' IUD Prods. Liab. Litig.*, 406 F. Supp. 540, 542-43 (J.P.M.L. 1975); *In re Gov't Auto Fleet Sales*, 328 F. Supp. at 220 (J.P.M.L. 1971). The Panel has frequently singled out Minnesota as just such a convenient and easily accessible district. *E.g., In re Medtronic, Inc., Implantable Defibrillators Prods. Liab. Litig.*, 408 F. Supp. 2d 1351, 1352 (J.P.M.L. 2005) ("Transfer to [Minnesota] ... provides a centrally located forum for actions filed in several locations nationwide."); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005 ("Given the ... the geographic dispersal of pending actions, it is clear that a wide array of suitable transferee districts presents itself.... [T]he District of Minnesota is an appropriate forum for this docket" because, *inter alia*, it "is a geographically central, metropolitan district."); *In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001) ("[T]he District of Minnesota is the appropriate forum" because, *inter alia*, it is "a major metropolitan court that ... is centrally located."); *In re TMJ Implants Prods. Liab. Litig.*, 844 F. Supp. 1553, 1554 (J.P.M.L. 1994) ("[T]he District of Minnesota is the appropriate transferee forum" because, *inter alia*, it "is a geographically central and accessible location for this nationwide litigation."); *see also In re Mirapex Prods. Liab. Litig.*, --- F. Supp. 2d ---, 2007 WL 1853953, at *1 (J.P.M.L. June 22, 2007) ("We conclude that the District of Minnesota is an appropriate transferee forum in this docket because," *inter alia*, "Minneapolis is easily accessible.").

Finally, the District of Minnesota is an appropriate forum because it is convenient for counsel. While not ordinarily a leading factor in the Panel's decisions, convenience of counsel can play a role in the selection of a transferee district, particularly when, as in this case, the convenient forum is otherwise appropriate. *See, e.g., In re Regents of the Univ. of Cal.,* 964 F.2d 1128, 1136 (Fed. Cir. 1992) (transferee district selected by the Panel was appropriate because, *inter alia,* the "centrally located forum" was comparatively convenient "for counsel located on both coasts of the United States"), *aff'g In re Recombinant DNA Tech. Patent & Contract Litig.,* No. 912 (J.P.M.L. Feb. 19, 1992); *In re Embro Patent Infringement Litig.,* 328 F. Supp. 507, 508 (J.P.M.L. 1971) (one factor in selection of transferee district was that "five of the seven attorneys active in [the] litigation maintain[ed] offices in the" district); *In re Gov't Auto Sales,* 328 F. Supp. at 219-20 (one factor in rejection of potential transferee district was "[t]he fact that ... none of plaintiffs' counsel [had] offices" there, which "would cause the plaintiffs substantial inconvenience if pretrial proceedings were held" there). Here, Plaintiffs' primary counsel in all twenty-eight cases is based in Minneapolis, and KFC's co-counsel has been involved in this litigation since the outset of this litigation almost two years ago. Centralization in Minnesota would not only be convenient for these counsel, but would also save both parties substantial expense in associating and coordinating with local counsel in cases pending around the country. *See, e.g., In re Air Fare Litig.,* 322 F. Supp. 1013, 1015-16 (J.P.M.L. 1971) ("We think that the Northern District of Illinois will be more convenient for counsel, and thus less expensive for their clients, than either of the other proffered districts").

## CONCLUSION

For the foregoing reasons, the KFC FLSA Cases should be transferred to the District of Minnesota for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407 and assigned to Judge Schiltz.

Dated: August 21, 2007                    By: _____
                                              Robert P. Davis
                                              Robert C. Varnell
                                              Tamara S. Killion
                                              Jack L. Wilson
                                              MAYER, BROWN, ROWE & MAW LLP
                                              1909 K Street N.W.
                                              Washington, D.C. 20006
                                              Telephone: (202) 263-3000

                                              *Attorneys for Defendant KFC Corporation*

- 14 -

EXHIBIT

"H"

# From the Horse's Mouth: The Workings of the Judicial Panel on Multidistrict Litigation

**Cases involving common questions of fact are assigned to one district court for pretrial proceedings, but under Lexecon they can't be tried there**

### By John F. Nangle

TODAY'S Judicial Panel on Multidistrict Litigation consists of seven district judges designated by the Chief Justice of the United States. The present panel members, no two of whom are permitted by the enabling statute, 28 U.S.C. § 1407, to be from the same circuit, are William B. Enright, Southern District of California; Clarence A. Brimmer, District of Wyoming; John F. Grady, Northern District of Illinois; Barefoot Sanders, Northern District of Texas; Louis C. Bechtle, Eastern District of Pennsylvania; and John F. Keenan, Southern District of New York. I have the honor to serve as chairman of the panel.

During the statistical reporting year ending September 30, 1998, the panel took action in 124 of the 1,256 multidistrict dockets that had been created under Section 1407 since the panel's inception in 1968. A total of 651 panel orders were filed.

### STATUTORY DUTIES

The panel is charged with a number of statutory duties. First, under Section 1407, it has the responsibility of (1) identifying civil actions pending in different federal courts involving one or more common questions of fact, (2) determining, after briefing and hearings, whether any of those actions should be transferred to a single district for coordinated or consolidated pretrial proceedings, and (3) selecting, with the consent of the transferee district court, the judge or judges before whom the centralized pretrial proceedings should be conducted.

*John F. Nangle, a senior judge of the U.S. District Court for the Eastern District of Missouri, has been chairman of the Judicial Panel on Multidistrict Litigation since 1990. He received a B.S. from the University of Missouri in 1943 and a J.D. from Washington University in 1948. He was an active practitioner in the metropolitan St. Louis area until his appointment to the federal bench in 1973.*

During the 1998 reporting year, the panel ordered centralization of 16,940 actions, consisting of 15,735 transferred actions and 859 actions originally filed in transferee districts. These centralized actions embrace both actions in new dockets and "tag-along" actions that were filed outside the transferee district and added to previously established dockets by subsequent Section 1407 transfer. A tag-along action, as defined in Rule 1.1 of the panel's Rules of Procedure, is a "civil action pending in a district court and involving common questions of fact with actions previously transferred under Section 1407."

Tag-along actions that are originally filed in the transferee district are included in Section 1407 proceedings at the transferee court level and do not require action by the panel. The panel denied Section 1407 centralization in 283 actions during the 1998 reporting year, including both actions in new dockets and potential tag-along actions in previously established dockets.

28 U.S.C. § 2112(a) assigns one more task to the panel—that of designating the

court of appeals to hear appeals of federal agency rulings in certain instances in which petitions for review have been filed in more than one circuit. During 1998, the panel designated the appropriate circuit court for appeals of certain orders entered by the Environmental Protection Agency, the Federal Communications Commission, and the National Labor Relations Board.

## CLASSIFICATION OF DOCKETS

The panel classifies its dockets into several general areas:
- air and common disasters
- antitrust
- contract
- employment practices
- patent and trademark
- products liability
- securities law
- miscellaneous

A brief review of the activity during calendar year 1998 in some of the panel's more prominent litigations will serve to illustrate the range and complexity of the actions that come before it. The panel considered motions for transfer in new dockets involving (1) the August 1997 air crash near Agana, Guam; (2) antitrust conspiracies in the markets for oil, toys, compact discs, and various industrial products; (3) patent claims in the pharmaceutical and semiconductor industries and in the "Barney" children's character trademark; (4) tobacco products liability claims; (5) claims pertaining to the securities of Aetna Inc., Cityscape Financial Corp., Oxford Health Plans Inc., and Fine Host Corp.; and (6) miscellaneous claims relating to various life insurance companies' marketing practices, the Ford/Citibank cardholder rebate program, sweepstakes sponsored by American Family Publishers, and bankruptcy reaffirmation agreements. The panel also ordered transfer of tag-along actions in such major ongoing dockets as the asbestos and breast implant products liability litigations.

## HOW TRANSFERS OCCUR

Under Section 1407, transfer proceedings can be initiated by motion of a party or by the panel acting *sua sponte*. As a practical matter, most new dockets arise by motion rather than a panel order to show cause. The procedure with tag-along actions typically is the reverse. In that instance, when the panel learns of an action sharing questions of fact with previously centralized actions, the panel, after a review of the complaint and docket sheet, will issue an order conditionally transferring the action to the transferee district.

Under Rule 7.4 of the panel's Rules, the transmittal of the order to the clerk of the transferee district is stayed for 15 days to afford the parties to the action an opportunity to object to transfer. If no objection is received, then the order becomes final and transfer is effected with no further delay. If a party objects to transfer, the stay is continued, the objector may move to vacate the conditional transfer order, and the matter is then set for hearing by the panel.

The parties remain free, of course, to move for transfer of tag-along actions independently, and the panel most often continues to learn of the pendency of potential tag-alongs through notification by the parties. Indeed, Rule 7.5(e) of the panel's rules imposes an affirmative obligation on both parties to previously transferred actions and their counsel to promptly notify the panel of any potential tag-along actions in which that party is also named or in which that counsel appears. The simplicity of the conditional transfer order route, however, is that if no objections to transfer are raised, as is the case with the vast majority of tag-alongs, transfer can be effected on a basis more timely than that involved in a transfer motion.

It should be stressed that during the pendency of any Section 1407 transfer matter before the panel, whether pursuant to a transfer motion in a new docket, a transfer motion with respect to a tag-along action, or a motion to vacate a conditional transfer order, the authority of the court in which

the action is currently pending remains unaffected. That court's pretrial jurisdiction remains unlimited unless and until a final transfer order becomes effective.

Notwithstanding this jurisdictional point, in practice parties sometimes seek, and courts sometimes grant, stays of proceedings in actions in which eventual Section 1407 transfer is anticipated. There may be legitimate reasons for such an approach. For examples, a court may wish to defer to the transferee court on a pivotal issue that is likely to be present in other centralized actions; a court may wish to avoid dueling discovery activities and wait until a single transferee court can devise its own schedule accommodating the interests of all a docket's parties and witnesses; or a court, simply in the process of prioritizing its own heavy caseload, may not wish to expend significant energies in developing a familiarity with issues involved in an action likely soon to be assigned to another court.

The flip side of this stay situation arises when the panel is asked to deny or delay transfer because of the pendency of matters in the originating court that may be dispositive of or otherwise relevant to the question of Section 1407 transfer. These situations, ranging from motions to dismiss, jurisdictional questions, motions to remand to state court, motions to transfer under Section 1404, just as examples, often are indeed appropriate for resolution in the originating court.

On occasion, the panel has been known to await their resolution before ruling on the Section 1407 question. More often, however, the panel takes the approach that a court wishing to address such matters has had adequate time to do so while the Section 1407 transfer question has been pending before the panel, and that failure to do so is an indication of the court's belief that the matter is more appropriate for resolution by the transferee court, which has full authority to rule on nearly all such matters.

In reaching a decision whether to order transfer of actions, the panel is guided by the statutory direction that transfer is in order when the panel determines that transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." The statutory standards contemplate a decision made in an environment in which counsel for all parties discharge their responsibilities as officers of the court by advising the panel of all facts and circumstances relevant to the questions of whether and where transfer should be effected in order to secure the just and expeditious resolution of all involved actions.

Aware of the real world, however, the panel realizes that some parties and counsel are not above attempting to use Section 1407 as a means of advancing particular strategic interests, and the panel has responded accordingly. For example, in selecting a transferee district, the panel does not consider the litigants' dissatisfaction with past or anticipated rulings of the transferee court. Nor does the panel consider the governing appellate law of the transferee district. And most emphatically, the panel does not sit in review of decisions of the transferee court. The panel views the conduct of pretrial proceedings to be within the province of the individual selected as transferee judge. It has neither the power nor the inclination to make any determinations regarding the actual conduct of the Section 1407 proceedings.

It should be noted, at least parenthetically, that under a 1976 amendment to Section 1407, the panel is authorized to order transfer for trial, as well as pretrial, of any action brought under Section 4C of the Clayton Act, the *parens patriae* provision. Following hearings in November 1998 at which the panel was presented with its first request for transfer under this provision, it ordered transfer for trial as well as pretrial in a docket involving antitrust claims in the market for disposable contact lenses.

## REMANDS

Apart from any actions transferred for trial under the limited *parens patriae* pro-

vision, however, it is another duty of the panel to remand any still pending actions transferred under Section 1407 to their originating transferor districts at or before the conclusion of pretrial proceedings in the transferee district. During the 1998 reporting year, the panel ordered remand of 1,171 actions and denied remand, in the absence of a suggestion for remand from the transferee judge, of 74 actions.

In considering the question of remand, the panel has consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings. Thus, the practice has been for a transferee court, at the latest by the end of pretrial, to issue an order, notice or letter suggesting to the panel that it is of the view that a still pending action, or separable claim, cross-claim, counterclaim or third-party claim is ripe for remand to the MDL transferor court.

The transferee court may precede such a suggestion by ordering the parties to show cause why it should not so proceed. The panel, on receiving this suggestion, will issue a conditional remand order, allowing any party the opportunity to voice its objections to remand. The transferee judge's notice of suggestion of remand to the panel is obviously an indication that the judge perceives his or her role under Section 1407 to have ended, so it should come as no surprise that any objector would bear a strong burden of persuasion. A similar burden awaits any party advocating remand before the panel, absent a suggestion of remand from the transferee judge.

The number of remanded actions as a proportion of transferred actions might seem small, but the above figures are misleading. For example, during the 1998 reporting year, another 16,940 previously transferred actions were terminated in the transferee district during the pendency of pretrial proceedings, usually pursuant to a settlement, motion to dismiss, or summary judgment motion.

## LEXECON AND SELF-ASSIGNMENT

Historically a significant number of actions not settled or otherwise dismissed in their transferee districts during their pretrial stages remained in the transferee districts for trial. This was because, until the U.S. Supreme Court ruled otherwise in *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*,[1] an accepted procedure in multidistrict practice had been for transferee judges to order transfer for trial, pursuant to 28 U.S.C. §§ 1404 or 1406, of cases previously transferred to them for pretrial under Section 1407.

In *Lexecon*, the Court held that a district court that conducted pretrial proceedings pursuant to Section 1407 had no authority to invoke Section 1404(a) to assign a transferred case to itself for trial, because such self-transfer would thwart the panel's capacity to obey the "unconditional" command of Section 1407(a) to remand, at the end of pretrial, each action transferred by the panel that has not been terminated in the transferee district. Footnote 4 of Justice Souter's opinion for the Court in *Lexecon* implies that MDL transferee judges may not use Section 1404(a) to transfer to any district at all, such as a third district or back to the Section 1407 transferor district. By analogy and inference, an MDL transferee judge likewise now may not transfer under Section 1406.

The facts giving rise to *Lexecon* were not typical of MDL litigations. The MDL docket in which the case arose was centralized in the District of Arizona and involved claims related to the failure of Lincoln Savings & Loan Association. The *Lexecon* case itself, however, was not brought against any of the array of defendants connected with the financial institution's downfall but against the class plaintiffs' counsel in the MDL docket. They were sued by consultants who (1) did

---

1. 118 S.Ct. 956 (1998).

a lot of corporate defense work, (2) had also been sued in the MDL docket, (3) failed to obtain dismissal of those claims through the course of multidistrict proceedings and a four-month trial, and (4) entered, as jury deliberations were about to begin, a $700,000 "resolution" (scrupulously constructed so as not to be deemed a "settlement") of the claims against them.

The consultants then went back to their home forum in the Northern District of Illinois and filed *Lexecon*, alleging that the class plaintiffs' counsel had defamed them and had sued them in the Lincoln Savings MDL in an effort to ruin their effectiveness in future commercial litigation. The panel transferred the case to Arizona under Section 1407, the Arizona judge transferred it to himself for trial under Section 1404, and the consultants fought the Section 1404 transfer all the way to the Supreme Court, where their position prevailed.

## IN THE WAKE OF LEXECON

The so-called practice of "self-transfer" has been engaged in for many, many years, without any question from counsel for plaintiffs or defendants. Indeed, the *Lexecon* plaintiffs themselves had voiced no objection to the Arizona court's Section 1404 transfer of the Lincoln Savings case in chief for trial. Except for the highly unusual circumstances forming the background of *Lexecon*, I feel certain that no one would have questioned this practice. However, I certainly do not have any disagreement with the Supreme Court decision itself.

Now that *Lexecon* has foreclosed self-transfer as a means of enabling complex cases transferred under Section 1407 to be tried by the judge most familiar with the underlying parties, counsel and issues, the question is what should be done to move into the void created by it. A number of judges and lawyers have asked how the MDL transferee judge might still resolve MDL actions through trial, while remaining faithful to the *Lexecon* limitations.

At least four alternatives have been offered for consideration:

● The transferee court could try a bellwether case in an action originally filed in the transferee district, the result of which may promote settlement in transferred actions.

● If the plaintiff is willing to have the transferee court try an action transferred under Section 1407, the plaintiff could dismiss the action and refile the action in the transferee district, provided venue lies there. The defendant's agreement to this option may be needed if the refiling can be accomplished only in conjunction with a tolling of the statute of limitations or a wavier of venue.

● The Section 1407 transferor court, as Justice Souter observed in Section IIC of the *Lexecon* opinion, could transfer the action back to the transferee court under Section 1404 after the panel has remanded the action to the transferor court under Section 1407. The transferee court might facilitate such a transfer by recommending it in its suggestion of remand to the panel.

● The transferee judge could seek an intercircuit or intracircuit assignment pursuant to 28 U.S.C. §§ 292 or 294 and follow an action remanded to its originating transferor district in order to preside over the trial of the action in that district.

The panel also has received a number of communications from transferee judges and practitioners suggesting that legislation be sought amending Section 1407 to permit transferee judges to order self-transfer of MDL cases.

The following steps have been taken. First, the panel has proposed such an amendment to the Judicial Conference. Second, two Judicial Conference committees—the Committee on Court Administration and Case Management and the Committee on Federal-State Jurisdiction—have considered our proposal. Third, in September 1998, the Judicial Conference unanimously adopted the recommendation of the Federal-State Jurisdiction Committee and agreed to support "legislation that

**DEFENSE COUNSEL JOURNAL**—July 1999

would amend the multidistrict transfer provision, 28 U.S.C. § 1407, to provide that a district court conducting pretrial proceedings pursuant to that section could assign a transferred case for trial proceedings to itself or another district court in the interest of justice and for the convenience of parties and witnesses."

The merits of this proposed legislation were articulated clearly in the committee's report to the Judicial Conference:

> There are strong policy reasons for authorizing a transferee court to transfer a group of factually and legally related, consolidated cases to itself for trial purposes. Typically, following the Judicial Panel's transfer of these cases to the transferee judge, the transferee judge manages and handles these cases for many months, sometimes years. During that period, the transferee judge gains a solid understanding of both the facts and the legal issues involved.

> The historical data indicate that the overwhelming majority of cases consolidated and transferred by the Judicial Panel to transferee judges settle or are adjudicated on pretrial motion. But those that are not resolved prior to trial should arguably be tried before the judge with the greater understanding of the case, typically the transferee judge, not the transferor judge. Moreover, since the transferee judge frequently holds several pending cases (not just one), there may be efficiencies in trying these related cases together in one suit. The common issues of law and fact among the consolidated cases, which at the outset made pretrial transfer by the Judicial Panel appropriate,

may also make appropriate consolidated trial.

> Finally, the transferee judge's ability to facilitate a global settlement of the consolidated cases is probably somewhat greater if he or she is empowered to try the consolidated cases if it becomes necessary. As suggested above, most of the cases transferred by the Judicial Panel since its creation have been settled or resolved on a pretrial basis. The context in which those settlements have arisen is one that the *Lexecon* decision has ended—one in which the transferee court has been empowered to transfer cases for trial to itself. If that context is changed and the self-transfer authority is eliminated, the transferee judge's ability to settle cases may be somewhat reduced. The empirical significance of this observation is hard to measure, but the principle that a settlement judge has greater power to facilitate settlement if, later on, he or she might also serve as the trial judge, seems right.

It is submitted that the panel's proposed amendment to Section 1407 is sound and will promote efficient and fair adjudication. Like any proposal in the field of litigation, there probably will be some type of opposition from some special interest group. My experience as chairman of the Judicial Panel on Multidistrict Litigation over a period of years, however, is that counsel for both plaintiffs and defendants have agreed for the most part with the practice of self-transfer in the handling of MDL dockets. I urge support for this proposal.